In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1875

ARGELIO GONZALES,

*Petitioner-Appellant,*

*v.*

BRETT MIZE,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 06 CV 514—**Theresa L. Springmann**, *Judge*.

ARGUED APRIL 2, 2009—DECIDED MAY 11, 2009

Before BAUER and FLAUM, *Circuit Judges*, and KAPALA, *District Judge*.[*]

KAPALA, *District Judge*. Argelio Gonzales, an Indiana state prisoner serving a 30-year sentence for various drug-related offenses, challenges the district court's denial of

---

[*] The Honorable Frederick J. Kapala of the United States District Court for the Northern District of Illinois, sitting by designation.

his habeas corpus petition, 28 U.S.C. § 2254. On appeal, Gonzales argues that he received ineffective assistance of counsel as a result of his trial counsel's conflicts of interest. We affirm.

## I. Background

Attorney Jay Hirschauer represented Gonzales at a jury trial that began on April 27, 1998, and ended April 30, 1998. The Indiana Court of Appeals summarized the facts presented at trial as follows:

> [O]n December 29, 1997, Indiana State Police and Logansport Police Department officers conducted an undercover sting operation in which Gonzales sold a police informant a total of 1.16 grams of crack cocaine during two transactions conducted inside Gonzales' apartment. Police recorded the transactions on both audio and video tape. A subsequent search of the apartment, which Gonzales shared with two other individuals, produced 12.35 grams of crack cocaine, 2.69 grams of powder cocaine, and 31.90 grams of marijuana. Police also discovered an additional 9.39 grams of crack cocaine on the ground below a second story bedroom window. The apartment was located 382 feet from Crayon Campus, a licensed child care home.

The jury found Gonzales guilty of possession of cocaine and dealing cocaine within 1,000 feet of school property, possession of marijuana, and maintaining a common nuisance. The court sentenced him to concurrent prison

terms of 30 years on each of the cocaine charges, and 18 months on each of the other two charges. On direct appeal, the Indiana Court of Appeals upheld Gonzales' convictions and sentences. Gonzales did not file a petition for transfer to the Indiana Supreme Court.

In an amended post-conviction petition filed on November 12, 2004, in Cass County circuit court, Gonzales raised four arguments: (1) his trial counsel's simultaneous representation of him, codefendants Jorge Perez and Laura Lapcheska, and exculpatory witnesses Arnaldo Garcia and Larry Campbell violated his right to conflict-free counsel and impaired his counsel's representation of him; (2) his counsel failed to present exculpatory evidence at trial; (3) he was deprived of his right to a unanimous jury verdict; and (4) his appellate counsel, who also was his trial counsel, was ineffective in failing to raise the non-unanimous verdict issue on direct appeal.

At the evidentiary hearing on Gonzales' amended post-conviction petition, Hirschauer agreed that he represented Lapcheska at the same time as Gonzales. Hirschauer explained that an initial written plea agreement offered to Lapcheska called for her to plead guilty to possession of cocaine in exchange for a fifteen-year prison sentence. It did not mention her testifying against Gonzales. According to Hirschauer, the prosecutor never made an offer to Lapcheska which required her to testify against Gonzales. If such an offer was made, Hirschauer said that he would not have communicated it to her but, rather, he would have gotten out of the case due to a conflict of interest. Lapcheska ultimately refused the first plea agreement.

After a month or two, Lapcheska accepted a second written plea agreement for 20 years' imprisonment. Like the first plea agreement, it did not require her to testify. Hirschauer said that the prosecution had no need for Lapcheska to testify against Gonzales because the police had both Gonzales and Lapcheska on videotape. After reviewing copies of Lapcheska's first and second plea agreements, Hirschauer testified that neither required her to testify against anyone. Hirschauer said that the second plea agreement provided that she give a clean-up statement, but he did not think that she ever did.[1]

Laura Lapcheska testified that she and Gonzales had dated, engaged in a drug deal operation, and were arrested at the same time. The first plea agreement offered to her included a 15-year prison sentence and required her to provide a clean-up statement. According to Lapcheska, Hirschauer explained to her and to her parents that a clean-up statement entailed testimony about her involvement with drug dealing and that she would be exempt from any prosecution other than murder. When asked whether Hirschauer's explanation of the clean-up statement included a requirement to testify against Gonzales, Lapcheska responded, "Well, to tell what happened, he explained it as I would have to

---

[1] As this opinion later explains, the clean-up statement provision gave Lapcheska the option to reveal any criminal activity she may have committed prior to December 29, 1997, in exchange for the State of Indiana's agreement not to prosecute her for such criminal activity. The record does not indicate whether a clean-up statement is given under oath.

mention, to name, and to me, to mention anybody's name would be giving testimony against them . . . So yes." Lapcheska said that once Hirschauer explained the clean-up statement, she decided not to accept the first plea agreement. Lapcheska testified further that she later accepted a 20-year plea agreement that did not require a clean-up statement.

On cross-examination, after being shown the first written plea agreement, Lapcheska acknowledged that it contained no reference to a clean-up statement. She added that she did not recall reading the agreement. She did remember that Hirschauer discussed the plea agreement with her and her parents. Lapcheska agreed that it was possible that she was confused about when the conversation between her, Hirschauer, and her parents took place, but said that she remembered that she did not accept the first plea agreement because she refused to testify against Gonzales.

Arlita Morehead, Lapcheska's mother, testified that while she did not remember who explained the clean-up statement, she said that it was explained that Lapcheska would have to testify against Gonzales. Morehead could not remember whether Hirschauer was even present during this alleged explanation.

Gonzales testified that Hirschauer never told him that he also represented Lapcheska, Perez, Campbell, and Garcia. Gonzales said Hirschauer never discussed any conflict of interest with him.

The first and second plea agreements offered to Lapcheska were admitted as exhibits at the hearing. The

first plea agreement had no provision for Lapcheska to
testify against anyone or to give a clean-up statement. The
second plea agreement, entered on March 27, 1998, pro-
vided in pertinent part:

   a.   The Defendant agrees to plead guilty to the infor-
        mation charging Dealing cocaine within 1000' of
        school property.

   b.   The State of Indiana agrees to dismiss the informa-
        tion charging count 1, [and] 3 and any criminal
        activity prior to 12/29/97 disclosed by defendant
        in a clean-up statement given by 3/30/98.

   c.   The Court will impose as a sentence in this case
        the following:

        1.   Twenty years imprisonment in Indiana Depart-
             ment of Corrections.

The Cass County Circuit Court found that neither plea
agreement required Lapcheska to testify against anyone.
The Court interpreted the second plea agreement to
mean that the charges against Lapcheska in counts 1, 3, and
4 would be dismissed, and that the State of Indiana
agreed not to file charges against Lapcheska for any
criminal activity that she committed prior to December 29,
1997 and disclosed in a clean-up statement.[2] Based on these
findings of fact, the circuit court held that the evidence
was insufficient to support a charge of ineffective assis-
tance of trial counsel based on conflicts of interest arising

---

[2]   The plea agreement actually refers to "count 1 [and] 3," not 1,
3, and 4.

out of Hirschauer's representation of various defendants. The court did, however, set aside Gonzales' conviction for dealing cocaine on the basis that he was deprived of his right to a unanimous jury verdict.

Before the Indiana Court of Appeals, Gonzales argued that Hirschauer had a conflict of interest due to his joint representation of him, Lapcheska, Perez, Garcia, and Campbell. With respect to Lapcheska, Gonzales argued that a conflict of interest arose when Hirschauer negotiated a plea agreement for Lapcheska that called for her to testify against Gonzales. Citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980), Gonzales maintained that because he showed an actual conflict of interest, he did not need to demonstrate prejudice, that is, that there was a reasonable probability that, but for the ineffective assistance, the result of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

The Indiana Court of Appeals set out the standards for ineffective assistance of counsel stated in both *Strickland*, 466 U.S. at 687, and *Cuyler*, 446 U.S. at 348, and then noted that Gonzales raised an actual conflict of interest argument only as to Hirschauer's dual representation of Gonzales and Lapcheska. The court found no actual conflict of interest because its review of the record demonstrated that the terms of the plea agreements that Hirschauer negotiated for Lapcheska did not require Lapcheska to testify against Gonzales, and because Lapcheska never gave a clean-up statement. The Court concluded that Gonzales failed to demonstrate an actual

conflict of interest.[3] Consequently, the Indiana Court of Appeals affirmed the circuit court's ruling on Gonzales' post-conviction petition.

Gonzales filed a petition to transfer to the Indiana Supreme Court stating that the question presented on transfer was:

> Argelio Gonzales' attorney, Jay Hirschauer, tried to help the State prosecute Mr. Gonzales by negotiating a plea agreement for Mr. Gonzales' co-defendant which called for the co-defendant to testify against Mr. Gonzales. The Court of Appeals erred in finding that this did not create a conflict of interest.

The Indiana Supreme Court denied transfer.

Gonzales then petitioned for a writ of habeas corpus under § 2254 in which he raised the three issues that had been advanced on his direct appeal[4] and a claim of ineffective assistance of counsel. The district court deter-

---

[3] The Indiana Court of Appeals also noted that the circuit court was entitled to reject Gonzales' and Lapcheska's testimony that Hirschauer did not inform them of the dual representation, in favor of Hirschauer's contrary testimony. The Court did not, however, explain how this finding was significant to the alleged constitutional violation.

[4] Gonzales' three arguments on his direct appeal were: (1) the evidence was insufficient to prove that the sale of cocaine was conducted within 1,000 feet of a school; (2) the trial court erred by taking judicial notice of an amendment to a statute and so instructing the jury; and (3) the State should have been required to prove his knowledge that he was within 1,000 feet of a school.

mined that although Gonzales attempted to present multiple reasons for counsel's ineffectiveness, the only issue exhausted in the Indiana courts, and therefore properly considered on habeas corpus review, was the issue presented in the petition to transfer set out above. The district court concluded that, "[b]ecause Gonzales has not demonstrated that the State Court was unreasonable in its determination of his claim that his attorney was ineffective because of a conflict of interest, this ground presents no basis for habeas corpus relief." After the district court denied Gonzales a certificate of appealability, we issued a certificate only on the question of whether Gonzales received ineffective assistance of counsel.

## II. Analysis

On appeal, Gonzales contends that the district court erred when it rejected his claim that he is being held in violation of the Sixth Amendment to the United States Constitution because he was denied effective assistance of counsel when his trial attorney simultaneously represented him, Lapcheska, and Campbell. Gonzales maintains that the conflicts affected the adequacy of his attorney's representation and that, under such circumstances, prejudice is presumed.

Our review of a district court's denial of a petition for a writ of habeas corpus is *de novo*. *Julian v. Bartley*, 495 F.3d 487, 491 (7th Cir. 2007). We review the decision of the last state court that substantively adjudicated each claim. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

We must evaluate Gonzales' petition under the Antiterrorism and Effective Death Penalty Act (AEDPA), specifically 28 U.S.C. § 2254(d). *See Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S. Ct. 1441, 1418 (2009). Under that provision, federal habeas relief may not be granted with respect to a claim which was adjudicated on the merits in the state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mixed questions of law and fact, such as ineffective assistance of counsel, are subject to review under § 2254(d)(1). *Porter v. Gramley*, 112 F.3d 1308, 1313 (7th Cir. 1997). Factual determinations made by a state court are presumed to be correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has represented that he is proceeding under § 2254(d)(1).

## A. Conflict of Interest as a Result of Representing Campbell

The State of Indiana argues that the district court properly determined that Gonzales procedurally defaulted his claim based on Hirschauer's dual representation of him

and Campbell when he failed to make this argument in his petition to transfer to the Indiana Supreme Court. We agree.

A federal court may not grant an application for a writ of habeas corpus from a prisoner being held in state custody unless the petitioner has exhausted his available state remedies prior to seeking federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A). "This so-called exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Fair presentment contemplates that the operative facts and the controlling legal principles of the federal claim be submitted to the state court through one complete round of state-court review, either on direct appeal or in post-conviction proceedings. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Whether a claim is procedurally defaulted is a question of law this court reviews *de novo*. *Malone*, 538 F.3d at 753.

Gonzales concedes that his conflict of interest claim based on Hirschauer's dual representation of him and Campbell was not included in the "question presented on transfer" section of his petition for transfer to the Indiana Supreme Court, but maintains that he made that argument in his petition for transfer, thereby alerting

the Indiana Supreme Court that he was raising the issue. We disagree.

Gonzales included a description of Hirschauer's dual representation of him and Campbell in the "Background and Prior Treatment of Issues" section of his petition for transfer but made no substantive argument that an actual conflict of interest arose out of that dual representation. The passing references to Campbell did not sufficiently alert the Indiana Supreme Court that Gonzales was arguing that there was an actual conflict of interest as a result of Hirschauer's dual representation of Gonzales and Campbell. *See Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) ("[T]he failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default."). The question presented on transfer to the Indiana Supreme Court was clearly limited to a claim of ineffective assistance of counsel growing out of Hirschauer's dual representation of Gonzales and Lapcheska. Thus, we agree with the district court's determination that this issue is procedurally defaulted.[5]

---

[5] Gonzales also argues that the Indiana Court of Appeals incorrectly applied *Strickland* to his claim concerning Hirschauer's representation of Campbell when in fact he did advance an actual conflict of interest argument with respect to the representation of Campbell which would be controlled by *Cuyler*. After reviewing Gonzales' post-conviction appellate brief, we disagree that he advanced a *Cuyler* claim before the Indiana Court of Appeals. Moreover, even assuming arguendo that Gonzales did make a *Cuyler* argument before that court

(continued...)

Where, as here, a petitioner has procedurally defaulted a claim, he may obtain federal habeas relief only if he can show either cause and prejudice for the default (*i.e.*, some external obstacle prevented petitioner from presenting his claim to the state courts) or that a failure to grant him relief would result in a fundamental miscarriage of justice (*i.e.*, a claim that the constitutional deprivation probably has resulted in a conviction of one who is actually innocent). *Blintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005). Gonzales does not make either of these arguments. For these reasons, the claim of an actual conflict of interest arising from Hirschauer's dual representation of Gonzales and Campbell is procedurally defaulted.

## B. Conflict of Interest as a Result of Representing Lapcheska

One of the basic duties that counsel owes to a criminal defendant is a duty of loyalty, including a duty to avoid conflicts of interest. *Strickland*, 466 U.S. at 688. "[M]ultiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest." *Cuyler*, 446 U.S. at 348. A lawyer representing codefendants whose interests conflict cannot provide adequate legal assistance. *Id.* at 345.

---

[5] (...continued)
with regard to Hirschauer's representation of Campbell, he clearly did not include that argument in his petition for transfer to the Indiana Supreme Court, and therefore, as explained above, the argument is procedurally defaulted.

To establish ineffective assistance of counsel under *Stickland*, a petitioner must establish (1) that his attorney's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for the ineffective assistance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88. In contrast, under *Cuyler*, "to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. While a defendant who shows that a conflict of interest adversely affected his counsel's performance need not show prejudice to prevail, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 349-50. An adverse effect is established by showing that "but for the attorney's actual conflict of interest, there is a reasonable likelihood that counsel's performance somehow would have been different." *Stoia v. United States*, 22 F.3d 766, 771 (7th Cir. 1994) (quotation marks omitted).

Gonzales argues that the district court erred in finding that the Indiana Court of Appeals was reasonable in determining that under *Cuyler* no actual conflict of interest arose out of Hirschauer's dual representation of Gonzales and Lapcheska. Gonzales first argues that there was an actual conflict of interest because the first plea agreement required Lapcheska to testify against Gonzales. Gonzales bases this argument not on the text of the first plea agreement, which clearly has no such requirement, but, rather, on Lapcheska's and Morehead's testimony

that they understood the first plea agreement to contain such a requirement. Gonzales contends that no court has addressed whether their testimony should be disbelieved in favor of Hirschauer's contrary testimony.

Gonzales' argument lacks merit. Lapcheska testified that the clean-up statement was in the first plea agreement, and not the second, and that Hirschauer's explanation of the clean-up statement provision in the first plea agreement caused her to understand that Lapcheska had to testify against Gonzales. Morehead only remembered that someone explained that Lapcheska would have to testify against Gonzales, but did not remember if Hirschauer was present or when the explanation occurred.[6] The Indiana Court of Appeals affirmed the Cass County Circuit Court's conclusion that the first plea agreement offered did not include a clean-up statement. This factual determination was reasonable and constituted a rejection of Lapcheska's and Morehead's testimony that the first plea agreement contained a clean-up statement which Lapcheska understood to require her testimony against Gonzales. The Indiana Court of Appeals was entitled to reject Lapcheska's and Morehead's testimony on this point in favor of Hirschauer's testimony. Doing so was reasonable especially in view of the fact that the first plea agreement had no such provision written into it and it appears, as indicated by the second plea agreement, that when a clean-up statement is contemplated

---

[6] Gonzales has not argued that Lapcheska and Morehead were mistaken and that the clean-up statement explanation was actually in connection with the second plea agreement.

by the parties it is expressly stated in the written agreement. Thus, Gonzales has failed to present clear and convincing evidence to rebut the Indiana Court of Appeals' conclusion that the first plea agreement did not require Lapcheska to testify against Gonzales. In addition, although not reached by the Indiana courts, we fail to see how Gonzales would be able to satisfy the second prong of *Cuyler* when there is nothing in the record to show that Hirschauer did anything more than convey an offer from the State to Lapcheska and it is undisputed that she did not accept it.

Gonzales also makes the argument that the Indiana Court of Appeals implicitly found that the first plea agreement required testimony against Gonzales when it wrote "Lapcheska turned down the first plea, and she later accepted a second plea agreement with the sentence increased to twenty years but with no requirement to testify against Gonzales." Gonzales asserts that the choice of the coordinating conjunction "but" implies that the Indiana Court of Appeals believed that some requirement to testify was removed from the first plea agreement. This argument was made for the first time in Gonzales' reply brief and as a result is waived. *See Simpson v. Office of the Chief Judge of Will County*, 559 F.3d 706, 719 (7th Cir. 2009) ("Arguments raised for the first time in a reply brief are waived." (quotation marks omitted)).[7]

---

[7] Waiver aside, the sentence quoted by Gonzales is from the "Facts" section of the Indiana Court of Appeals' decision and it

(continued...)

Next, Gonzales maintains that the second plea agreement itself clearly and convincingly demonstrates that the Indiana Courts incorrectly concluded that the second plea agreement contained no requirement that Lapcheska testify against Gonzales. Gonzales argues that the moment Lapcheska was offered the second plea agreement requiring her to give a clean-up statement, Hirschauer was conflicted. Gonzales reasons that Hirschauer's duty of loyalty to Lapcheska required him to counsel her as to the benefits of the plea agreement. However, if Lapcheska took the second plea agreement in exchange for its benefits, Lapcheska would have to divulge information that would inculpate Hirschauer's other client, Gonzales, because whatever criminal history Lapcheska might have "come clean" about was "intimately entwined" with Gonzales and would necessarily involve prior criminal activity that she engaged in with Gonzales.

Gonzales' argument is flawed in that it assumes that the clean-up statement in the second plea agreement requires Lapcheska to disclose more than her own criminal

---

[7] (...continued)
describes Lapcheska's testimony concerning the second plea agreement. This sentence was not a finding of fact and, in any event, cannot fairly be construed as a finding that the first plea agreement contained a requirement that Lapcheska testify against Gonzales in view of the fact that the Indiana Court of Appeals explicitly concluded in the "Discussion and Decision" section of its decision that "the record demonstrates that the requirement to testify was not written into either plea agreement."

activity in order to receive immunity from prosecution for such activity. It does not. In addition, while the second plea agreement gave Lapcheska the option of providing a clean-up statement, it did not require it. Moreover, the clean-up statement contemplated disclosure of her criminal activity prior to December 29, 1997, the date of the crimes with which she and Gonzales' were charged. Gonzales has not pointed to any evidence indicating that Hirschauer was actively representing conflicting interests at the time Lapcheska accepted the second plea agreement, given that there is no evidence in this record suggesting that Hirschauer knew that Lapcheska could provide information about joint criminal activity involving her and Gonzales which occurred prior to December 29, 1997. *See United States v. Hopkins*, 43 F.3d 1116, 1119 (6th Cir. 1995) ("A conflict is hypothetical where . . . the attorney does not in fact know of the conflict from the dual representation. Unless the attorney knows of the conflict, he or she cannot make a choice between alternative courses of action depending on which client is to be favored.").

When asked at oral argument what evidence there was that Hirschauer had knowledge of any pre-December 29, 1997, joint criminal activity of Gonzales and Lapcheska, Gonzales' counsel's response was two-fold. First, he said Hirschauer testified that Gonzales and Lapcheska were lovers and that their criminal history was intertwined. Second, Gonzales' counsel said that Hirschauer's knowledge of Gonzales' and Lapcheska's prior criminal activity could be inferred from Hirschauer's testimony that he would not have com-

municated to Lapcheska a plea agreement that contemplated her testimony against Gonzales. According to counsel, this suggests that Hirschauer was aware of some prior criminal activity about which Lapcheska could testify.

Our review of Hirschauer's testimony, however, reveals nothing indicating Hirschauer's knowledge of any pre-December 29, 1997, joint criminal activity of Gonzales and Lapcheska. While Hirschauer testified that he knew that Gonzales and Lapcheska were lovers, he said nothing which indicated that he was aware of any joint criminal activity on their part that occurred prior to December 29, 1997. To conclude that Gonzales and Lapcheska had engaged in prior criminal activity just because they were lovers is just speculation.

Hirschauer's comment indicating that he would not communicate to Lapcheska any plea agreement requiring her testimony against Gonzales did not show that he knew Lapcheska could implicate Gonzales in their pre-December 29, 1997, criminal activity. When Hirschauer made that comment, he clearly was referring to a plea agreement that contemplated Lapcheska testifying against Gonzales in the pending drug case, rather than about their prior criminal activity. In our view, Hirschauer's statement that he would not have communicated to Lapcheska a plea agreement that required her testimony against Gonzales combined with the fact that he actually presented the plea agreement to Lapcheska, if anything, demonstrates that he had no knowledge of any prior joint criminal activity of his

clients. Therefore, Gonzales has failed to rebut with clear
and convincing evidence the Indiana Court of Appeals'
determination that the second plea agreement did not
require Lapcheska to testify against Gonzales and has
failed to overcome the presumption of correctness. *See*
28 U.S.C. § 2254(e)(1). Consequently, Gonzales has not
shown that the Indiana Court of Appeals' determination
that he failed to demonstrate an actual conflict of interest
was contrary to, or involved an unreasonable applica-
tion of, *Cuyler*. *See* 28 U.S.C. § 2254(d)(1).

Gonzales' last contention on appeal is that the Indiana
Court of Appeals (1) ignored the main focus of his argu-
ment, that is, that the requirement to testify against
Gonzales was unstated and that the second plea agree-
ment's clean-up statement provision created a conflict
even if there was no written requirement to testify; and
(2) incorrectly added a new factor to the *Cuyler* test, that is,
that parties can waive an actual conflict of interest simply
by being placed on notice of the joint representation.[8]

---

[8] Gonzales also argues that the Cass County Circuit Court did
not even recognize the test set out in *Cuyler*, let alone apply it
correctly. As noted above, we review the decision of the last
court to address Gonzales' contentions on the merits. *See Watson*,
560 F.3d at 690. The Indiana Court of Appeals' order is the
operative decision and it clearly applied the *Cuyler* test. More-
over, while it is true that the circuit court did not cite *Cuyler*, a
state court's decision is not contrary to clearly established
federal law merely because the court does not cite federal law.
*See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("Federal courts are not
(continued...)

With respect to Gonzales' first point, the Indiana Court of Appeals did not ignore Gonzales' arguments concerning the alleged actual conflict of interest arising out of the dual representation of Gonzales and Lapcheska; as we have explained it rejected them. While the Indiana Court of Appeals analysis was brief and focused on the fact that a requirement to testify was not written into either plea agreement, § 2254(d) deference still applies to perfunctory or summary dispositions. *See Watson*, 560 F.3d at 692; *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir. 1997) (holding that the criterion "is whether the determination is at least minimally consistent with the facts and circumstances of the case" regardless of any deficiency in the discussion of the reasons).

---

[8] (...continued)

free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that a state court does not have to cite to Supreme Court "cases—indeed, [§ 2254(d)] does not even require *awareness* of [the Supreme Court] case, so long as neither the reasoning nor the result of the state-court decision contradicts them"). With regard to the conflict-of-interest issue, the circuit court found no requirement in either plea agreement that Lapcheska testify against Gonzales and, therefore, found insufficient evidence of an actual conflict of interest. As such, even though it did not cite *Cuyler*, the circuit court concluded that the first requirement of the *Cuyler* test—demonstrating an actual conflict of interest—was not met.

In any event, even if the Indiana Court of Appeals did not address Gonzales' specific argument, we would then apply *de novo* review under § 2254(a). *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). Were we to engage in *de novo* review under § 2254(a), this court would reject, for the reasons stated above, Gonzales' argument that compliance with the clean-up statement provision of the second plea agreement would have necessarily inculpated Gonzales and in turn, created an actual conflict of interest growing out of Hirschauer's dual representation of Gonzales and Lapcheska.

We also would conclude under § 2254(a) review that Gonzales has failed to show that the alleged actual conflict of interest adversely affected the adequacy of Hirschauer's representation of Gonzales. In his brief, Gonzales argues that at the moment Hirschauer encouraged Lapcheska to "come clean," his "basic strategic decisions" about his representation of Gonzales were affected. Gonzales does not, however, explain what those basic strategic decisions were or how counseling Lapcheska to accept the second plea agreement affected those decisions. When asked at oral argument what Hirschauer would have done differently had he not been laboring under the alleged actual conflict of interest, Gonzales' counsel said that he would not have counseled Lapcheska to accept the plea agreement which contemplated her trading information for leniency. This response does not satisfy the second element of the *Cuyler* test. Gonzales fails to explain how the clean-up statement provision in Lapcheska's second plea agreement would adversely affect Hirschauer's

representation of Gonzales in light of the fact that Lapcheska's opportunity to provide information in exchange for immunity lasted only 3 days and lapsed approximately one month before Gonzales' trial. Gonzales does not demonstrate how in any other way an actual conflict of interest adversely affected Hirschauer's representation of Gonzales.

With respect to Gonzales' second point, although the Indiana Court of Appeals did note that the circuit court was entitled to reject Gonzales' and Lapcheska's testimony indicating that Hirschauer did not inform them of the dual representation, the Court did not rely upon a waiver by Gonzales of Hirschauer's purported actual conflict of interest. Nevertheless, any improper finding concerning a waiver of an actual conflict of interest would not take away from the Indiana Court of Appeals' conclusion that Gonzales failed to meet the first prong of the *Cuyler* test. Therefore, this court rejects Gonzales' arguments that the Indiana Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law.

### III. Conclusion

For the foregoing reasons, the judgment of the District Court for the Northern District of Indiana is AFFIRMED.