NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted December 5, 2012[*]
Decided December 26, 2012

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-2893

| | |
|---|---|
| ROBERT MICHENER, | Appeal from the United States District |
| *Petitioner-Appellant,* | Court for the Western District of Wisconsin. |
| | |
| v. | No. 11-cv-171-bbc |
| | |
| UNITED STATES OF AMERICA, | Barbara B. Crabb, |
| *Respondent-Appellee.* | *Judge.* |

## O R D E R

Robert Michener, a federal prisoner, appeals the denial of his motion to vacate his sentence under 28 U.S.C. § 2255, in which he alleges that he received ineffective assistance from his trial counsel. We granted a certificate of appealability to consider whether counsel abandoned him during a "critical stage" of the proceedings and whether counsel had a conflict of interest. We affirm.

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

The facts underlying Michener's arrest and conviction are set out in our decision on his direct appeal, *United States v. Michener*, 352 F. App'x 104 (7th Cir. 2009), but a brief recap may be useful here. Between 2002 and 2006, Michener led a network that supplied marijuana to buyers in Wisconsin. As government investigators closed in, Michener threatened to kill anyone who cooperated. When one confederate was arrested and agreed to assist the investigation, Michener banished him to the Philippines and financed his flight. Michener himself was eventually arrested and later cooperated with investigators.

Upon learning from the Drug Enforcement Administration that he was the subject of an investigation, Michener retained Earl Gray as counsel. Gray had been recommended by one of Michener's marijuana suppliers, Noy Petchapan.[1] Attorney Gray advised him to plead guilty and cooperate with the government; according to Michener, Gray told him that his cooperation would lessen his sentence to a range of three and one-half to five years, based on sentencing reductions for acceptance of responsibility, see U.S.S.G. § 3E1.1, and the substantial assistance he would provide to authorities, see U.S.S.G. § 5K1.1; Fed. R. Crim. P. 35(b).

Attorney Gray was present when Michener read and signed the plea agreement, but he did not attend a proffer with government authorities that took place later that day. After Michener signed the plea agreement (which barred the government from using any information obtained during the proffer directly against him), the attorney told Michener that he would not be attending the proffer. When Michener asked why, the attorney replied: "I don't want the Feds accusing me of tipping Noy off." Michener surmises that the attorney worried about being subjected to charges of attorney misconduct given his relationship to Petchapan, who also was under investigation and had discussed his case with the attorney. With little choice, Michener says that he "reluctantly proceeded to participate in the proffer meeting alone and unrepresented." At the meeting Michener admitted to purchasing 500 pounds of marijuana from Petchapan and wiring money to the confederate in the Philippines.

The following month Michener was sentenced to 151 months, the bottom of his guidelines range (accounting for a downward variance for his cooperation with the government; there was no adjustment for acceptance of responsibility). We affirmed that sentence. *United States v. Michener*, 352 F. App'x 104 (7th Cir. 2009).

Michener then moved to vacate his sentence under 28 U.S.C. § 2255 because he received ineffective assistance of counsel. He argued first that attorney Gray abandoned

---

[1] Michener refers in his brief variously to "Petpachan," "Petchapan," and "Petachpan," but we will adopt the spelling used by the district court—Petchapan.

him at a critical stage of the proceedings — the proffer — and that this abandonment entitled him to a presumption of prejudice. Second, he argued that this abandonment was precipitated by a conflict of interest, in that the attorney was also actively representing Petchapan, a potential co-defendant. Third, Michener argued that the attorney advised him to plead guilty based on a gross underestimate of the potential sentence. Finally, Michener sought an evidentiary hearing.

The district court denied his motion, concluding that Michener failed to support his allegations of substandard representation with evidence sufficient to require an evidentiary hearing, let alone a grant of relief. The court explained that Michener did not show that his attorney's absence from the proffer session with the government — even if it were a critical stage — in any way prejudiced him. Michener had not shown that the government misused any of the information he provided. Next, regarding the attorney's alleged conflict of interest, the court concluded that Michener failed to show that the attorney in fact was representing him at the same time he was representing Petchapan, or if he were, that Michener had been prejudiced in any way. The court also found no evidence that Michener had been given inaccurate information about the length of the sentence he was facing, and in any event, his statement that Gray told him he would serve no longer than five years was belied by his answers during his plea colloquy that he understood he could be sentenced to the maximum sentence under the law, which his plea agreement had set at 40 years. And even if his attorney had given him inaccurate information about his sentence's length, he had not shown that he would not have pleaded guilty if the attorney had given him correct information. Michener then moved under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment; the court denied the motion.

On appeal Michener argues that he received ineffective assistance of counsel, but the government raises a threshold contention that we lack jurisdiction to hear this appeal because it is untimely. In the government's view, Michener filed his notice of appeal more than 60 days after the district court's order, if his postjudgment motion were viewed as arising under Federal Rule of Civil Procedure 60(b) rather than Rule 59(e), which allows for tolling the time to appeal. According to the government, Michener filed his motion to alter or amend judgment two days past the 28-day deadline for filing a motion under Rule 59(e). The government adds that the court did not give Michener any affirmative assurance that his postjudgment motion tolled his time to appeal, such that it might qualify under the doctrine of "unique circumstances." See *Hope v. United States*, 43 F.3d 1140, 1143 (7th Cir. 1994).

Even though Michener's postjudgment motion should have been construed as arising under Rule 60(b), this appeal is timely. On June 16, 2011, Michener filed a letter with the district court that he labeled "notice of my intent to appeal." In this filing Michener

recounted communication problems he experienced with his attorney (no longer Gray) — who he believes must file his notice of appeal — and explained that he was filing the "intent" to appeal to preserve his appeal rights. The filing identifies the case name, case number, and parties. Particularly for a litigant proceeding pro se, see *Smith v. Grams,* 565 F.3d 1037, 1043 (7th Cir. 2009), that information was sufficient for us to construe the filing as the functional equivalent of a timely notice of appeal. It apprised the court and the parties of Michener's desire to appeal. See *Wells v. Ryker,* 591 F.3d 562, 564–65 (7th Cir. 2010) (construing petitioner's "Motion for Extension of Time to File a Motion for Certificate of Appealability or a Motion for Reconsideration" as functional equivalent of notice of appeal); *Grams,* 565 F.3d at 1042–43 (construing pro se motion naming parties and order being appealed as functional equivalent); *Listenbee v. City of Milwaukee,* 976 F.2d 348, 350 (7th Cir. 1992) (construing pro se motion for extension of time to file appeal as functional equivalent).

As for the merits, Michener argues that his attorney faced two possible conflicts of interest that adversely affected his representation and that the district court should have applied *Cuyler v. Sullivan,* 446 U.S. 335, 349–50 (1980), which held that a defendant need not prove prejudice if he can show that a conflict of interest affected the adequacy of the representation. Attorney Gray was conflicted, Michener argues, because he was simultaneously representing Petchapan and, even if his representation of Petchapan was not formalized, his close relationship with Petchapan might have alerted the government to possible attorney misconduct, thereby compromising his advocacy on Michener's behalf.

This argument fails when analyzed under *Cuyler,* however, because Michener cannot "demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Gonzales v. Mize,* 565 F.3d 373, 381 (7th Cir. 2009), quoting *Cuyler,* 466 U.S. at 348. Michener must show that but for the attorney's conflict with Petchapan, his performance would have been different, see *Gonzales,* 565 F.3d at 381, and the forgone performance was detrimental to Michener's interests, see *Stoia v. United States,* 22 F.3d 766, 771 (7th Cir. 1994). Michener argues that the attorney's performance would have been different because, absent the conflict, the attorney would have attended the debriefing. His absence from that session, though, is not akin to abandoning a defense strategy or tactic to Michener's detriment. See *Winfield v. Roper,* 460 F.3d 1026, 1039 (8th Cir. 2006); *Hovey v. Ayers,* 458 F.3d 892, 908 (9th Cir. 2006); *Eisemann v. Herbert,* 401 F.3d 102, 107 (2d Cir. 2005).

Michener maintains that the attorney rendered ineffective assistance by abandoning him at the debriefing with the government. Because it was a critical stage, he argues, the district court should have analyzed the attorney's absence under *United States v. Cronic,* 466

U.S. 648 (1984), in which prejudice is presumed, rather than under the familiar two-part test of *Strickland v. Washington,* 466 U.S. 668 (1984), which requires a showing of prejudice.

We do not need to decide whether the debriefing was a critical stage. When asked to apply *Cronic* to a novel situation, we ask whether the circumstances involving counsel's performance were "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic,* 466 U.S. at 658. Thus, the task of deciding whether to apply a presumption of prejudice "depends itself to some degree on a prejudice analysis." *United States v. Morrison,* 946 F.2d 484, 503 n.4 (7th Cir. 1991). By raising an argument concerning the attorney's absence under *Cuyler* in addition to *Cronic,* Michener compelled us to determine whether his attorney's absence adversely affected him. As discussed above, we concluded that Michener was not adversely affected, which means Michener cannot prove the more stringent requirement of prejudice. See *Hall v. United States,* 371 F.3d 969, 973 (7th Cir. 2004); *Enoch v. Gramley,* 70 F.3d 1490, 1496 (7th Cir. 1995). Because Michener suffered no prejudice from his attorney's absence, we need not decide in this case whether the debriefing is a critical stage.

Michener next contends that attorney Gray gave him inaccurate predictions about the length of the sentence the government would recommend, and that this misinformation led him to plead guilty. He says that the attorney advised him, for instance, that he would receive credit for acceptance of responsibility and serve only three and one-half to five years in prison. But we need not assess Gray's performance if Michener was not prejudiced, see *Morgan v. Hardy,* 662 F.3d 790, 802 (7th Cir. 2011); *United States v. Fudge,* 325 F.3d 910, 924 (7th Cir. 2003), and Michener has not provided objective evidence that he would have rejected the plea and gone to trial but for the attorney's erroneous predictions, *see Koons v. United States,* 639 F.3d 348, 351 (7th Cir. 2011); *Hutchings v. United States,* 618 F.3d 693, 697 (7th Cir. 2010). He submitted an affidavit from his mother stating that Gray told her he expected a three and one-half to five year sentence, but the affidavit does not state that Michener relied on that information in deciding to accept the plea; it is therefore insufficient to show prejudice. See *Paters v. United States,* 159 F.3d 1043, 1047 (7th Cir. 1998). Michener also submitted his own affidavit characterizing the attorney's misinformation as the "main factor" in his decision to plead guilty, but this bare assertion too is insufficient to establish prejudice. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). Even taking Michener's and his mother's affidavits together to show that the advice was given and that he relied on it, Michener still testified in his plea colloquy that no one pressured him to plead guilty or promised him a particular sentence. We have no reason to believe that his plea testimony — made under oath — was untruthful. See *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *United States v. Stewart*, 198 F.3d 984, 986–87 (7th Cir. 1999).

Finally, Michener requests an evidentiary hearing, arguing that the district court abused its discretion in declining to hold one. See *Coleman v. Hardy*, 628 F.3d 314, 318 (7th Cir. 2010). But as the district court explained, Michener did not provide sufficient evidence to require an evidentiary hearing. See *Koons*, 639 F.3d at 354–55.

AFFIRMED.