**Richard M. FISCHER, Petitioner,**

v.

**OZAUKEE COUNTY CIRCUIT COURT, Respondent.**

Case No. 10–C–553.

United States District Court, E.D. Wisconsin.

Sept. 29, 2010.

Order Denying Motion to Alter or Amend Jan. 7, 2011.

---

11. The plaintiffs' response brief states that plaintiffs Garza and Womock are not making Title VII claims. (Pls.' Resp. at 11).

Dean A. Strang, Hurley Burish & Stanton SC, Madison, WI, James M. Shellow, Shellow & Shellow SC, Robin Shellow, Urszula K. Tempska, The Shellow Group, Milwaukee, WI, for Petitioner.

Marguerite M. Moeller, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, for Respondent.

## DECISION AND ORDER GRANTING WRIT OF HABEAS CORPUS

AARON E. GOODSTEIN, United States Magistrate Judge.

## I. PROCEDURAL HISTORY

On July 6, 2010, Richard M. Fischer ("Fischer"), proceeding with the assistance of counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, (Docket No. 1), as well as a brief in support of his petition, (Docket No. 2). On July 22, 2010, the Honorable Rudolph T. Randa screened Fischer's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (Docket No. 5.) The respondent answered the petition on August 31, 2010, (Docket Nos. 10, 11), and the petitioner has replied, (Docket No. 12). This matter was reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge. (Docket Nos. 4, 7, 8.) The pleadings on Fischer's petition are closed and the matter is ready for resolution.

■ On March 21, 2007, Fischer was convicted in Ozaukee County Circuit Court following a jury trial of second offense operating a vehicle under the influence and operating a vehicle with a prohibited blood alcohol concentration. (Docket No. 1 at 2.) He was sentenced to serve 5 days in jail and pay a $350.00 fine, and his driver's license was suspended for one year. (Docket No. 1 at 2.) Execution of this sentence was stayed pending appeal. (Docket No. 1 at 1.) This stay remains in effect and according to the judgment of conviction, Fischer remains subject to the conditions of bail while this stay is in effect. (Ans. Ex. A.) Thus, Fischer is "in custody" within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2254(a). *Hensley v. Municipal Court, San Jose–Milpitas Judicial Dist.,* 411 U.S. 345, 346, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).

Fischer appealed and on September 10, 2008, the court of appeals affirmed. (Docket No. 1 at 3; Docket No. 1 at 13–19.) Fischer petitioned the Wisconsin Supreme Court for review, which was granted, and on February 2, 2010, the Wisconsin Supreme Court affirmed Fischer's conviction. (Docket No. 1 at 3; Docket No. 1 at 20–35.) Fischer filed a petition for certiorari with the United States Supreme Court, which was denied on June 21, 2010. (Docket No. 1 at 4; Docket No. 1 at 36.)

In his present petition, Fischer presents one claim for relief. He contends that the trial court's exclusion of the defendant's expert, who would have testified that the defendant's blood alcohol concentration ("BAC") at the time he was driving was lower than that required for conviction, violated Fischer's right to present a defense under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (Docket No. 1 at 6–7.)

Fischer sought to introduce the testimony of an expert who utilized the results of the preliminary breath test ("PBT") conducted on Fischer by a police officer at the roadside "as one of the mathematical constraints or bases of his opinion" that Fischer's BAC at the time he was driving was below the legal threshold of 0.08%. (Docket No. 2 at 2.) The trial court barred this testimony because Wis. Stat. § 343.303

precludes PBT results from being admitted in any action or proceeding except to show probable cause for an arrest. The matter proceeded to trial and the state called an expert who opined that Fischer's BAC at the time he was driving was in excess of 0.08%. (Docket No. 2 at 3.) Fischer did not call an expert to rebut this opinion.

Fischer contends that invoking Wis. Stat. § 343.303 to prevent him from presenting an expert witness to rebut the prosecution's expert offends his constitutional right to present a defense. The Wisconsin Supreme Court disagreed with Fischer's position, relying in part upon *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), wherein the Court "held that state rules that result in exclusion of defense evidence are constitutionally valid 'so long as they are not arbitrary or disproportionate to the purposes they are designed to serve.'" *State v. Fischer*, 2010 WI 6, ¶ 5, 322 Wis.2d 265, 778 N.W.2d 629 (quoting *Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261) (internal quotation marks omitted). The Wisconsin Supreme Court held that

> in an OWI prosecution, even if a defendant establishes a constitutional right to present an expert opinion that is based in part on PBT results, the right to do so is outweighed by the State's compelling interest to exclude that evidence. Permitting the use of that evidence as the basis for an expert opinion would render meaningless the legislature's act forbidding such evidence in OWI prosecutions, an act that promotes efficient investigations of suspected drunk driving incidents and furthers the State's compelling interest in public safety on its roads. The legislature's decision limiting the admissibility of PBT results helps law enforcement officers do their jobs with more cooperation from drivers than they would otherwise be likely to get cooperation that is especially critical

given that a PBT may be requested when an officer has a basis to justify an investigative stop but has not established probable cause to justify an arrest.

*Id.*

The respondent admits that Fischer's petition is timely, that he has exhausted his state court remedies with respect to the ground for relief raised in the petition, and that the petition is not a second or successive petition. (Docket No. 10 at ¶¶ 3, 6.)

## II. FACTS

The following relevant facts are contained in the Wisconsin Supreme Court's decision:

> The following facts are undisputed: In January 2005, Fischer was pulled over when an officer observed lane deviation and suspected drunk driving. The stop occurred at approximately 1:40 a.m. Fischer performed poorly on field sobriety tests. After those tests, at a time unspecified in the police report, a PBT was administered, and it measured a breath alcohol content of .11 percent. Fischer was arrested; a chemical blood test taken at 2:48 a.m. showed a BAC of .147 percent. He was charged with operating while intoxicated, second offense, and operating with a BAC of .08 or more, second offense, contrary to Wis. Stat. § 346.63(1)(a) and (b). Fischer pled not guilty, and the case was set for trial.
> He retained an expert who prepared a report using the data from the two tests, estimates as to the precise timing of the breath test after the stop, and absorption rate formulas to generate absorption curves, with the purpose of estimating the BAC prior to the time the PBT was taken, at the moment Fischer was stopped. In his report, the expert said

his calculations were based on a method similar to the one known as speculative retrograde extrapolation, which uses known data to estimate a person's BAC at an earlier point in time. In the first report, dated February 13, 2006, the expert included the results of both tests and reached the following conclusion:

> I conclude that Mr. Fischer was in the absorptive phase when he was stopped and that his BAC was increasing with a high degree of scientific certainty. In addition my analyses, based on the chosen assumptions, indicate that the data are most consistent with, but do not establish, the hypothesis that Fischer was below the 0.08% threshold when stopped.

In June 2006, the State filed a motion in limine to exclude the expert's report and testimony "to the extent the report and testimony rely on the PBT result," on the grounds that "(1) the PBT result is inadmissible at trial pursuant to statute and (2) there is no showing that the PBT result is reliable for any purpose other than probable cause." After the State filed its motion in limine, Fischer submitted a second report, dated July 7, 2006, which his expert prepared on the basis that the PBT result could not be included in the data used for the analysis. The expert concluded, "[T]he single determination of blood alcohol made at 2:48 [a.m.] over an hour after [Fischer's] arrest is insufficient to establish that his blood alcohol content was above the 0.08% threshold when he was stopped at 1:40 [a.m.]."

In a third submission by the expert, which was attached to Fischer's response to the State's motion in limine and submitted as Fischer's offer of proof after the court granted the motion, the expert, Dr. John Steele, contrasted the analysis possible using both the PBT and blood test results with the analysis possible without the use of the PBT result, and concluded:

> If one rejects the breath test data and relies only on the blood test, then the plausible range of BAC when Mr. Fischer was stopped ranges from near 0.0% to 0.164%[,] a range which is both higher and lower than the critical 0.080% legal threshold....
>
> If one includes the breath test result, ... then at the time he was stopped Mr. Fischer most likely had a BAC of approximately 0.040% to 0.067%.

The report that was the subject of the motion in limine included Fischer's PBT result in the text of the report. Though the report attached to Fischer's offer of proof stated that the PBT result "played no role in computing the curves," the report acknowledged that the PBT result played a significant role in the overall analysis by "allow[ing] the range of BAC [at the time of the stop] to be narrowed down."

Following a motion hearing on the matter, the circuit court granted the State's motion in limine. In so doing, the court observed that it was not aware of the legislative history of § 343.303, but that the legislature's intention was clear that "it was never contemplated that [a PBT] would be an evidentiary test." The circuit court said its ruling was made "in light of the legislature's clear pronouncement about the admissibility here." We note that had Fischer disclosed to Dr. Steele when and what alcoholic beverages he had been drinking, absorption curve opinion evidence from the expert based on that evidence would have been admissible.

The matter was tried to a jury. The defense theory, as summarized in counsel's closing argument, was that the arresting officer was overeager to make an arrest and was therefore "not fair," and

that Fischer was "going up on the absorption curve" when he was stopped and his BAC had not reached the .08 percent threshold. The jury convicted Fischer on both charges.

*Id.* at ¶¶ 8–14 (footnotes omitted).

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), [a federal court] may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: if the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

*Smith v. Grams,* 565 F.3d 1037, 1043 (7th Cir.2009).

■ Thus, with the passage of the AEDPA, no longer does a federal court reviewing a state inmate's petition for writ of habeas corpus conduct a de novo review of a state court's decision. *Williams v. Taylor,* 529 U.S. 362, 384, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Although § 2254(d)(1) does not require a federal court to defer to a state court's interpretation of federal law, it does require a federal court to carefully weigh all the reasons for accepting a state court's judgment and upset the state court's determination only if the federal court is convinced that the petitioner's custody violates the Constitution. *Williams,* 529 U.S. at 389, 120 S.Ct. 1495.

■ The court shall presume that the state court's factual determinations are correct, and the petitioner may rebut this presumption only be clear and convincing evidence. *Id.* (citing § 2254(e)(1)). The petitioner "bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable." *Smith,* 565 F.3d at 1043 (citing *Waddington v. Sarausad,* 555 U.S. 179, 129 S.Ct. 823, 831, 172 L.Ed.2d 532 (2009); *Sturgeon v. Chandler,* 552 F.3d 604, 609 (7th Cir.2009)).

■ A state court decision is "contrary to" a decision of the United States Supreme Court "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams,* 529 U.S. at 406, 120 S.Ct. 1495. A state court decision is not "contrary to" a decision of the United States Supreme Court merely because a federal court, if asked to review the matter anew, would reach a different conclusion than that of the state court. *Id.*

■ The "unreasonable application" prong applies when, for example, the "state-court decision ... correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08, 120 S.Ct. 1495. "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495; *see also Waddington,* 129 S.Ct. at 830 ("Where, as here, it is the state court's application of governing federal law that is challenged, the decision 'must be shown to be not only erroneous, but objectively unreasonable.'" (quoting *Middleton v. McNeil,* 541 U.S. 433, 436, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (per curiam) (in turn quoting *Yarborough v. Gentry,* 540 U.S. 1, 5, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam))); citing *Schriro v. Landrigan,* 550 U.S. 465,

473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold")). A petitioner is not required to show that no reasonable jurist would agree with the state court's decision, but on the flip-side, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 409–11, 120 S.Ct. 1495.

## IV. ANALYSIS

State and federal rulemakers have broad latitude under the U.S. Constitution to establish rules excluding evidence from criminal trials. This latitude, however, has limits. Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the U.S. Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve. *Holmes v. South Carolina*, 547 U.S. 319, 324–25, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (internal citations and quotation marks omitted). When an evidentiary or procedural rule results in an outright denial or significant diminution of the right to present a defense, this calls into question the integrity of the fact finding process and requires close examination. *Chambers v. Miss.*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In the present case, the application of Wisconsin's ban on the admission of PBT evidence resulted in the complete denial of a defense that, if

believed, would have resulted in Fischer's acquittal and thus must be closely examined.

In *Holmes*, the Court summarized four cases in which it held that state evidentiary rules unconstitutionally denied a defendant the right to present a defense. In *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Court found that a state statute that prohibited a co-defendant from testifying on behalf of a defendant unless the co-defendant had been acquitted was arbitrary because, in part, there was no prohibition upon the state calling a co-defendant as a witness. *Holmes*, 547 U.S. at 325, 126 S.Ct. 1727. The Court found a similar constitutional violation when it held that Mississippi's "voucher rule," which prohibited a party from impeaching its own witness, violated a defendant's right to present a defense when it was applied to prevent a defendant from impeaching a witness who denied committing the murder the defendant with which the defendant was charged with the fact that the witness had previously confessed the murder. *Id.* (citing *Chambers*, 410 U.S. 284, 93 S.Ct. 1038).

When a Kentucky court refused to allow a murder defendant to present evidence about the circumstances under which his confession was elicited in an effort to show that the confession, although determined admissible by the court following a pretrial motion to suppress, was nonetheless not believable, the Court held that this denied the defendant his right to present a defense. *Id.* at 326, 126 S.Ct. 1727 (citing *Crane v. Ky.*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)). In *Crane*, the Court determined that neither party "advanced any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence." *Id.* at (quoting *Crane*, 476 U.S. at 691, 106 S.Ct. 2142).

The Court found that Arkansas' wholesale exclusion of hypnotically refreshed testimony denied a defendant the ability to present a defense when it was applied to prevent a defendant testifying as to her recollection of the facts surrounding the murder she was charged with committing. *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The Court held that because Arkansas' rule precluded any use of hypnotically refreshed testimony, irrespective of the demonstrated reliability of the recalled information, the rule was irrational. *Id.* at 61–62, 107 S.Ct. 2704.

In *Holmes,* the defendant had sought to introduce evidence that another man committed the crime with which the defendant was charged. The Court reversed the defendant's conviction finding that the state court's prohibition upon a defendant presenting evidence of the guilt of a third party when the prosecution's case is strong served no rational purpose. *Holmes,* 547 U.S. at 328–31, 126 S.Ct. 1727.

However, on the opposite side, the Court held in *United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), that a bar on the admission of polygraph evidence was a rational restriction that did not interfere with a defendant's right to present a defense. *Id.* at 316–17, 118 S.Ct. 1261.

In the present case, the Wisconsin Supreme Court held that Wisconsin's prohibition upon the utilization of PBT results for any purpose, including when used only as one element of an expert's conclusion, was a rational restriction that benefited and limited prosecutors and defendants equally. *Fischer,* 2010 WI 6, ¶ 26, 322 Wis.2d 265, 778 N.W.2d 629. Allowing an expert report as a backdoor to admit PBT test results before the trier of fact would nullify Wis. Stat. § 343.303. *Id.* at ¶ 25. The court also stated that the prohibition against using PBTs in court served the

important state interest of getting drunk drivers off the road; the court opined that if PBTs were admissible in court, a driver stopped based upon reasonable suspicion that he was driving while intoxicated would be disinclined to submit to a PBT because of a fear that the PBT results would be used against him in court. *Id.* at ¶¶ 30–32. Thus, absent the total prohibition of PBTs being used for any purpose, more situations may arise where a police officer is forced to let an impaired driver drive away because, although the officer has reasonable suspicion that the driver is intoxicated, he nonetheless lacks the probable cause to arrest that might be provided by a PBT. *Id.* at ¶ 32.

 As discussed above, an individual challenging a state evidentiary rule as an infringement upon his right to present a defense must demonstrate that the rule is arbitrary or disproportionate to the purposes it is designed to serve. This standard, by itself, is a high hurdle for a defendant to overcome. But when an individual is challenging a state evidentiary rule in a § 2254 petition for a writ of habeas corpus, the hurdle is even higher. Not only must the petitioner demonstrate that the rule is arbitrary or disproportionate to the purposes it is designed to serve, but also that the state court's resolution of that matter was plainly contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Although the hurdle is high, for the reasons set forth below, it is a hurdle that the court concludes Fischer has cleared.

The unreliability of a PBT was, in the view of the trial court, the court of appeals, and the state, the reason why the legislature barred the use of PBT results at trial for any purpose. *See* (Ans. Ex. M at 15–16); *State v. Fischer,* 2008 WI App 152, ¶ 13, 314 Wis.2d 324, 761 N.W.2d 7, (Ans.

Ex. I at 5–14). The court of appeals discussed at length how PBTs are quite different from an Inoximeter, which, like a PBT calculates a BAC from a sample of breath, but unlike a PBT is subject to strict protocols regarding reliability and is admissible in court. *Fischer,* 2008 WI App 152, ¶¶ 4–6, 314 Wis.2d 324, 761 N.W.2d 7. Similarly, in a concurrence joined by Justices Patience Drake Roggensack and Michael J. Gabelman, Justice Annette Kingsland Ziegler followed the reliability route that the trial court and court of appeals utilized to reach the conclusion that exclusion of PBT results for any purpose was a reasonable legislative decision that did not deny Fischer the right to present a defense. Justice Ziegler noted that, although PBT results might be admissible in other contexts, courts have not recognized their admissibility to prove that an individual has a specific BAC, which in the context of a drunk driving case is an element of the offense that is often hotly contested. *Id.* at· ¶ 38. Allowing PBT results to be admitted for any purpose would almost surely lead to a dispute over the accuracy of this method and thus would run the risk of confusing a jury and undermine the presumption of accuracy afforded to other chemical tests such as the Intoxilyzer, which like a PBT, relies upon a breath sample to determine an individual's BAC. *Id.* at ¶¶ 40–41.

The United States Supreme Court recognized: "State and federal governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules." *Scheffer,* 523 U.S. at 309, 118 S.Ct. 1261. In the context of polygraph examinations, the Court held that because there was no consensus that polygraph evidence is reliable, the wholesale exclusion of such evidence was a reasonable restriction that did not offend a defendant's right to present a defense. *Id.* at 310–12, 118 S.Ct. 1261. The exclusion of evidence determined to be unreliable also served other important interests such as ensuring that the trial does not devolve into a trial over the reliability of the evidence and thus detract and distract from the central question of the defendant's guilt or innocence. *Id.* at 315, 118 S.Ct. 1261.

All the same could be said regarding PBTs and, in fact, was said by the lower courts that heard this matter and by three Justices concurring in *Fischer.* However, this court is unable to rely upon the rationale stated by the trial court, the court of appeals, or a minority of the Wisconsin Supreme Court in order to resolve Fischer's petition. Rather, this court must constrain its review to the majority decision of the Wisconsin Supreme Court, and the majority expressly rejected the state's argument that concerns about reliability warranted the wholesale exclusion of PBT results for any purpose in a drunk driving case. The court stated:

There is no basis for speculating that the reason the legislature prohibited the evidentiary use of a test that is used hundreds of times every day in Wisconsin is that it is "of dubious reliability even under the best testing conditions," as the State argued in its brief. In fact, a review of the legislative history of Wis. Stat. § 343.303 gives no indication whatsoever that the prohibition on the use of PBT results is rooted in concerns about reliability of the test. If the PBT's reliability were of such concern, it would be a small thing for any competent defense attorney to attack the reliability of PBT results and thereby limit the value to the prosecution of such evidence. Saying that PBT results are not admissible is not the same thing as saying they are not reliable. Wisconsin's tradition of leaving the weight and credibility of the

evidence to the trier of fact, which continues to be the law, cannot be squared with an analysis that excludes evidence on the basis of its lack of reliability. *Id.* at ¶ 34 (footnote omitted). This is a conclusion that this court is bound to respect, and thus it would be inappropriate for this court to consider whether the alternative position taken by the lower state courts and the minority of the Wisconsin Supreme Court is sufficient to sustain the result in this case.

The majority instead relied upon the state's compelling interest in arresting and convicting drunk drivers to conclude that the exclusion of PBT evidence did not violate Fischer's right to present a defense. The court stated: "The State argues that promoting the gathering of evidence necessary to arrest those who are actually intoxicated obviously furthers the State's compelling interest in arresting and prosecuting drunk drivers, and we agree." 2010 WI 6, ¶ 32, 322 Wis.2d 265, 778 N.W.2d 629. The state's argument, which the Wisconsin Supreme Court adopted, focused upon drivers who were stopped as a result of a police officer's reasonable suspicion that they were intoxicated but for whom the police lacked probable cause to arrest for drunk driving. (Ans. Ex. I at 15–17.)

For suspected drunk drivers who fall into this narrow gap between reasonable suspicion and probable cause to arrest, the state argued that Wisconsin's PBT statute serves a valuable purpose. Unless there is probable cause to arrest an intoxicated driver, Wisconsin's implied consent law (Wis.Stat. § 343.305) requiring the driver to provide a blood, breath, or urine sample for chemical analysis cannot be invoked. Thus, the state posits that by assuring a suspected drunk driver that his PBT results will be used only for determining whether he will be allowed to go on his way or arrested and subject to further

testing, but will not be used to determine his guilt or innocence at trial, removes a disincentive for drivers to agree to a PBT. (Ans. Ex. I at 16.)

> The [United States Supreme] Court has stressed that "no one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it," *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), but at the same time has recognized that the severity of the problem "cannot excuse the need for scrupulous adherence to our constitutional principles," *Grady v. Corbin*, 495 U.S. 508, 524, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

*Harmelin v. Michigan*, 501 U.S. 957, 1023, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

Although arresting and convicting suspected drunk drivers is undisputedly a compelling state interest, in the opinion of this court, the Wisconsin Supreme Court's stated rationale that this interest bars the admission of PBT evidence for the purpose of presenting it at trial is wholly speculative and arbitrary. Neither the state nor the Wisconsin Supreme Court has supported this conclusion through any legislative history or any other factual support. Although the Wisconsin Supreme Court refers to its prior decision in *County of Jefferson v. Renz*, 231 Wis.2d 293, 603 N.W.2d 541 (1999), wherein the court discussed the legislative history of § 343.403, *Renz* does not offer any meaningful insight into why the legislature concluded that PBTs were inadmissible for any purpose. Rather, the issue in *Renz* was what was meant by the phrase "probable cause to believe" a driver is intoxicated, which is the quantum of evidence necessary before a police officer may ask a motorist to undertake a PBT. Relying in part upon legislative history, the court concluded that the legislature sought to empower law en-

forcement officers to use PBTs as a preliminary screening tool for instances where the police officer did not yet have the probable cause necessary to make an arrest. *Renz,* 231 Wis.2d 293, ¶ 47, 603 N.W.2d 541. This is clearly a question wholly distinct from that which was before the court in *Fischer.*

The only portion of *Renz* that might arguably support the conclusion that the legislature banned any use of PBTs in order to further a goal of ensuring the safety of its roads is paragraph 46 wherein the court quotes a portion of the Act that created Wis. Stat. § 343.303 which states:

(13) OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF INTOXICANT OR CONTROLLED SUBSTANCE.(a) The legislature finds that:

1. Operation of motor vehicles by persons who are under the influence of an intoxicant seriously threatens the public safety and welfare.

2. Persons who operate motor vehicles while under the influence of an intoxicant do so in disregard of the safety and welfare of both themselves and other members of the driving public and of the laws of this state.

3. Penalties are an important and necessary element in deterring the operation of motor vehicles by persons who are intoxicated.

4. A substantial number of persons who operate motor vehicles while intoxicated are in need of treatment or education or both to prevent further offenses related to the use of intoxicants.

(b) The legislature intends by passage of this act:

1. To provide maximum safety for all users of the highways of this state.

2. To provide penalties sufficient to deter the operation of motor vehicles by persons who are intoxicated.

3. To deny the privileges of operating motor vehicles to persons who have operated their motor vehicles while intoxicated.

4. To encourage the vigorous prosecution of persons who operate motor vehicles while intoxicated.

5. To promote driver improvement, through appropriate treatment or education or both, of persons who operate motor vehicles while intoxicated.

§ 2051(13)(b), ch. 20, Laws of 1981.

Upon reviewing the totality of this Act, it becomes clear how futile it is to ascertain any legislative intent for the exclusion of PBT evidence from this isolated passage. Section 343.303 was created as part of a nearly 500 page budget bill that included a broad revision of the state's laws related to drunk driving and many other subjects. The provision quoted above appears over 50 pages later and is separated by various provisions on such wholly unrelated matters as who may issue marriage licenses and appropriations for energy programs. To conclude that this stated rationale motivated the legislature when it passed a narrow sub-provision in § 343.303 regarding the use of PBT results is only slightly more persuasive than concluding that the legislature limited the persons who may issue marriage licenses in an effort to keep drunk drivers off the road.

The Wisconsin Supreme Court's conclusion that the purpose of banning PBTs at trial is to keep the roads safe appears to have been made from whole cloth. This is not to say that a statute is arbitrary if a rationale for upholding the law is not found within the legislative history, or that a court tasked with determining whether a law's application is arbitrary is limited to what is contained in the legislative history. This court merely highlights the lack of support in the legislative history to demonstrate how the conclusion of the Wisconsin

Supreme Court appears to have been a product of pure speculation. A contrary, and perhaps stronger, but similarly speculative and arbitrary argument could be made that permitting defendants to utilize PBT results as Fischer seeks to do would also encourage a driver to take a PBT, thus serving the state's interest.

The Wisconsin Supreme Court concluded that barring the admission of PBT results removes a disincentive for a driver to agree to a PBT, i.e. the fear that it will be used against him in court. The court reasoned that a driver might not want to take a roadside PBT for a variety of reasons but if a police officer can say, "Don't worry. This test cannot be used against you at trial," this removes a very subtle disincentive for an otherwise reluctant suspected drunk driver to agree to the test. It should be noted the officer's statement is not wholly accurate. Although it is correct that the PBT results cannot be used *against* a suspected drunk driver, it is also true that the test also cannot be used *in favor* of defendant at trial. Thus, much of the arguable disincentive fostered by the representation that the PBT results will not be used against a defendant at trial is vitiated by the flip side that a defendant, likewise, could not use the results if they were beneficial to him. If the rationale behind Wis. Stat. § 343.303 is to encourage suspected drunk drivers to agree to a PBT by removing the fear of its use, it is a rationale based on a half truth.

Moreover, the removal of the disincentive that the PBT results would be used against a driver in court certainly does not provide such person any incentive to take a PBT. The Wisconsin Supreme Court in *Fischer* discussed individuals falling within a gap between reasonable suspicion to justify an investigative stop and probable cause to justify an arrest. *Fischer*, 2010 WI 6, ¶ 26, 322 Wis.2d 265, 778 N.W.2d 629. However, as *Renz* makes clear, the relevant gap is even smaller. A police officer may request a driver to undergo a PBT if the police officer has "probable cause to believe" that the individual is intoxicated, Wis. Stat. § 343.303, which is a quantum of proof the Wisconsin Supreme Court determined was greater than the reasonable suspicion required to make a traffic stop, but less than the probable cause to arrest. *Renz*, 231 Wis.2d 293, ¶ 47, 603 N.W.2d 541. Thus, a police officer is without recourse should the driver refuse a PBT only if the officer lacks probable cause to arrest.

A driver who falls into this narrow gap, regardless of whether the results would be used against him in court, will almost always be well-advised to literally keep his mouth shut and his breath out of a PBT. If law enforcement lacks probable cause to arrest, agreeing to a PBT is merely giving law enforcement an additional opportunity to establish probable cause to arrest. If the PBT shows the driver has a prohibited BAC, he will likely be arrested and subjected to additional testing. If the PBT suggests that the driver's BAC is not over the legal limit, he will either be asked to submit to additional testing based on other observations of his conduct, or allowed to go on his way. Either of these latter scenarios would have occurred if the driver had not agreed to the PBT.

A suspected drunk driver has an incentive to agree to a PBT only if he believes he is going to be arrested anyway, and thus is outside the narrow gap addressed by the Wisconsin Supreme Court. For example, a PBT might vitiate a police officer's probable cause that a person is intoxicated and reveal that the evidence of impairment was not the product of alcohol intoxication but instead a result of fatigue or a medical problem and thereby save a non-intoxicated driver from arrest. Additionally, a suspected drunk driver might

agree to take a PBT if he believed he was going to be arrested anyway and the PBT results could later be utilized as part of some sort of defense, which is, ironically, precisely what the Wisconsin Supreme Court has barred. Thus in precluding the use of PBT results for any purpose, the Wisconsin Supreme Court's interpretation of § 343.303 eliminates one of the very few incentives for a suspected drunk driver to gamble and agree to such a test.

Moreover, like the rule barring hypnotically refreshed testimony struck down by the Court in *Rock*, the present statute deprives a trial court from exercising any discretion. Arkansas barred hypnotically refreshed testimony out of concerns that such testimony was inherently unreliable. *Rock*, 483 U.S. at 56, 107 S.Ct. 2704. The Court rejected this argument and held that a per se rule barring admission irrespective of other indicia of reliability, for example, corroboration through physical evidence or independent witness testimony, violated a defendant's right to present a defense. *Id.* But in the present case, Wisconsin's similarly strict per se prohibition that deprives a trial judge of any discretion to ever allow PBT evidence is on even weaker footing in that the Wisconsin Supreme Court has expressly rejected the suggestion that PBT results are inherently unreliable.

It is important to note, however, that it is not sufficient that Wisconsin's total prohibition upon the use of PBT evidence at trial have a rationale basis. Because the law infringes upon a weighty right of the accused, the analysis is more searching than the due process analysis that applies to an ordinary law. Rather, it must yield not only if its application in the present situation is arbitrary but also if it is disproportionate to the purpose it is designed to serve. It is on this second element that this court concludes that the conclusion of the Wisconsin Supreme Court was most obviously an unreasonable application of federal law as determined by the Supreme Court.

On one side of the balance is the defendant's interest, which is undisputedly strong. The defendant sought to utilize the PBT results as one aspect of an expert's conclusion, which, if believed, would mean that the defendant was not guilty of the crime charged. This was not evidence that would simply raise questions regarding the prosecution's case but rather, if accepted by the jury, would mean that Fischer was not operating with a prohibited BAC. There is *no more important interest* of a defendant than the opportunity to exonerate himself.

Located on the other side of the balance is the state's interest in removing a disincentive for a driver to agree to a PBT. As this court previously observed, any value of removing the disincentive that may result if the PBT could be used against a driver in court is reduced, if not negated, by the fact that the driver is likewise barred from using any beneficial results of the test. Further, notwithstanding the promise not to use the results in court, a driver for whom the police lacked probable cause to arrest would still be disinclined to agree to a PBT which would provide the police with an additional opportunity to gather probable cause evidence to arrest. The state's interest, as articulated by the Wisconsin Supreme Court, is better served by a narrower law. Permitting Fischer to utilize a PBT result in the narrow circumstances he presents does not, in any way, eliminate the ability of the legislature to empower the police to encourage a reluctant driver to agree to a PBT with the promise that it will not be used against him in court. In other words, the legislature could promulgate a law that prohibits the use of PBT results by the state against a defendant. If the expressed rationale is

valid, such a law would remove a disincentive for drivers to agree to take a PBT.

Also in the balance is the fact that the Wisconsin Supreme Court has expressly rejected the argument that PBT evidence is inherently unreliable. Thus, this negates what other courts have recognized is a strong government interest in keeping unreliable information from the jury. *See Scheffer,* 523 U.S. at 309, 118 S.Ct. 1261.

The final factor in the balance is that the class of drivers that the police would be unable to arrest, absent driver consent to a PBT, is limited to those for whom the police only have "probable cause to believe" are intoxicated, but lack "probable cause to arrest." As Chief Justice Abrahamson noted in a concurring opinion in *Renz,* that was joined by Justice Ann Walsh Bradley, these articulations of probable cause "may, in real life, be indistinguishable." 231 Wis.2d 293, ¶ 55, 603 N.W.2d 541. If they exist at all, they are "crammed on a narrow spectrum." *Id.* This court shares the view of Chief Justice Abrahamson that, in reality, this distinction between "probable cause to believe" and "probable cause to arrest," if it exists at all, is extremely narrow and thus infrequently relevant.

A succinct summary of this court's balancing analysis is that the Wisconsin Supreme Court in *Fischer* determined that the state's interest in removing a questionable disincentive for a narrow class of drivers that may be non-existent due to the almost indistinguishable probable cause definitions, outweighs the need of a criminal defendant to present reliable evidence that may provide a defense to the charged crime. The court must reject that balancing act. Accordingly, this court concludes that this situation clearly calls for an application of the United States Supreme Court's holding that a state evidentiary rule must yield if its infringement upon a weighty right of the accused is disproportionate to the interest it was designed to serve. Thus, the court concludes that the Wisconsin Supreme Court's decision affirming the exclusion of Fischer's expert's testimony involved an unreasonable application of federal law as determined by the United States Supreme Court and therefore, a conditional writ shall be granted.

In this regard, the court notes that Fischer's petition deals with a very narrow issue. He seeks to use the PBT, not as a single piece of evidence to show he was not intoxicated, but rather as one element of an expert's testimony. Thus, the court's conclusion relates only to Fischer's ability to utilize PBT results as one aspect of an expert's report; this court is not making any determination as whether § 343.303 unconstitutionally bars a defendant from directly admitting PBT results into evidence. Further, this court is not considering whether the state, either as part of its case in chief or in rebuttal of a similar expert report proffered by the defendant, is likewise able to present PBT evidence when used as just one part of an expert report. Finally, the court is not considering whether the expert's opinion is admissible under Wis. Stat. §§ 907.02 and 907.03. These, and perhaps many other related questions, are questions for the state courts and the legislature.

## V. CONCLUSION

For the reasons set forth above, the court shall grant Fischer a writ of habeas corpus. There remains the question of the precise nature of the writ. Fischer is unlike the ordinary § 2254 petitioner because rather than seeking release from current incarceration, Fischer seeks to prevent the state from enforcing the custodial sentence of five days in jail that has been stayed pending appeal. Further, the judgment against Fischer contains both custodial (five days in jail) and non-

custodial (fine and suspension of driver's license) elements.

If Fischer had been sentenced to merely a fine and a suspension of his driver's license, this court would be unable to grant Fischer any relief because these punishments do not constitute "custody" under § 2254(a). *See, e.g., United States v. Michaud*, 901 F.2d 5, 7 (1st Cir.1990) (citing *Lillios v. State of New Hampshire*, 788 F.2d 60, 61 (1st Cir.1986); *Lefkowitz v. Fair*, 816 F.2d 17, 20 (1st Cir.1987)) (cited in *Virsnieks v. Smith*, 521 F.3d 707, 717 (7th Cir.2008)); *Tinder v. Paula*, 725 F.2d 801, 804 (1st Cir.1984) ("[H]abeas is not available as a remedy for fine-only convictions although the defendant remains subject to the supervision of the court and failure to pay the fine could result in incarceration.") (citing cases); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) ("[A] fine-only conviction is not enough of a restraint on liberty to constitute 'custody' within the meaning of the habeas corpus statutes."); *Obado v. New Jersey*, 328 F.3d 716, 717 (3d Cir.2003); *Harts v. Indiana*, 732 F.2d 95, 96 (7th Cir.1984) (citing *Westberry v. Keith*, 434 F.2d 623, 624–25 (5th Cir.1970) ($250 fine and one year driver's license revocation not custody within 28 U.S.C. § 2254); *Whorley v. Brilhart*, 359 F.Supp. 539, 541–42 (E.D.Va.1973) (ten year license revocation not custody)).

Even though the judgment of conviction indicates that Fischer's failure to pay the fine will result in 10 days in jail, absent evidence that Fischer lacks the financial resources to pay the fine, the court would be unable to grant Fischer relief from this threat of future custody if this had been the extent of his sentence. *See Michaud*, 901 F.2d at 7 (citing *Dremann v. Francis*, 828 F.2d 6, 7 (9th Cir.1987); *Spring v. Caldwell*, 692 F.2d 994, 999 (5th Cir.1982) (outstanding arrest warrant for failure to pay fine not a restraint on liberty)).

Having concluded that Fischer is "in custody in violation of the Constitution," 28 U.S.C. § 2254(a), this court is required to dispose of petition "as law and justice require." 28 U.S.C. § 2243. The court is mindful that the Seventh Circuit has held "the language of the statute prevents consideration of pendent challenges" merely because the petitioner is "in custody." *Virsnieks*, 521 at 721. However, leaving in place a judgment that imposes additional punishment for a conviction that this court has determined was obtained in violation of the defendant's constitutional rights is an action that appears entirely inconsistent with the command to dispose of the petition as law and justice requires.

■■■ "Conceptually, any habeas remedy 'should put the defendant back in the position he would have been in if the [constitutional] violation never occurred.'" *Nunes v. Mueller*, 350 F.3d 1045, 1057 (9th Cir. 2003) (quoting *United States v. Blaylock*, 20 F.3d 1458 (9th Cir.1994)). Absent relief from all consequences of his conviction, Fischer will not be placed back in the position he would have been had the violation never occurred. Thus, it is the conclusion of this court that law and justice require that Fischer's judgment of conviction be vacated, expunged, or otherwise set aside unless the state initiates proceedings to retry and commences the retrial of Fischer in accordance with the provisions of this order within 60 days of the date of this order. *See A.M. v. Butler*, 360 F.3d 787, 802 (7th Cir.2004) (ordering juvenile's adjudication of delinquency be expunged unless granted a new trial within 120 days); *see also Satterlee v. Wolfenbarger*, 453 F.3d 362, 370 (6th Cir.2006) (citing cases).

**IT IS THEREFORE ORDERED** that in accordance with 28 U.S.C. § 2254(d)(1), the petition for a writ of habeas corpus is **granted.** The judgment of conviction

against petitioner Richard M. Fischer in Ozaukee County Circuit Court case number 2005CM123 shall be vacated, expunged, or otherwise set aside without prejudice against any retrial in accordance with this order. Any such retrial shall commence within 60 days of the date of this order, subject to delays agreed upon by the parties, or necessitated by other pretrial proceedings as determined by the trial court. The Clerk shall enter judgment accordingly.

RICHARD M. FISCHER, Petitioner,

v.

J.B. VAN HOLLEN, Attorney General of the State of Wisconsin[1], Respondent.

### ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT

## I. PROCEDURAL HISTORY

On July 6, 2010, Richard M. Fischer ("Fischer"), proceeding with the assistance of counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, (Docket No. 1), as well as a brief in support of his petition, (Docket No. 2). On July 22, 2010, the Honorable Rudolph T. Randa screened Fischer's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (Docket No. 5.) This matter was then reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge. (Docket Nos. 4, 7, 8.) Once reassigned, this court entered a scheduling order providing Fischer 14 days from the date of the respondent's answer in which to reply. (Docket No. 9.) The court noted that the deadline for the respondent to answer the petition set by Judge Randa would remain in place. (Docket No. 9.) The respondent answered the petition on August 31, 2010,

(Docket Nos. 10, 11), and the petitioner replied on September 13, 2010, (Docket No. 12).

On September 29, 2010, this court granted the petition and ordered that the petitioner be retried within 60 days. (Docket No. 13.) Judgment was entered accordingly the same day. (Docket No. 14.) On October 27, 2010, the respondent filed a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e). (Docket No. 15.) The petitioner has responded, (Docket No. 16), and the respondent has replied, (Docket No. 19).

The respondent contends that this court committed two errors of law when it granted the petition. First, the respondent contends that this court mistakenly believed that it was bound by the reasoning of the Wisconsin Supreme Court. Instead, the respondent contends, the court should have limited its analysis to "the result of the state court's decision and not the reasoning that led to the result." (Docket No. 15 at 3.) Second, the court erred in concluding that Fischer would have been acquitted had the jury believed the expert's testimony.

In response, Fischer contends that the respondent waived these arguments by not raising them in the response to the petition. (Docket No. 16.) On the merits, Fischer contends that the principle of deference required the court to consider only the majority opinion of the Wisconsin Supreme Court, and that the excluded evidence was relevant to both crimes of which Fischer was convicted. (Docket No. 16.) In reply, the respondent contends that he did not waive any argument because the court never afforded him the opportunity to submit a brief in this matter. The court shall begin with the question of whether

---

1. In accordance with Rule 2(b) of the Rules Governing Section 2254 Cases, the caption is amended to name the Attorney General of the State of Wisconsin as the respondent in this matter. The Clerk shall update the docket accordingly.

the respondent waived the opportunity to make these arguments by not raising them in the response to the petition.

## II. WAIVER

### A. Additional Briefing Schedule

The court is well-aware the some other judges within this district may order parties to submit briefs in addition to a petition, an answer to the petition, and a reply to that answer. Such case management decisions are surely within the discretion of those individual judges. However, absent exceptional circumstances, it has not been the practice of this court to order additional briefing. This has been so particularly since the 2004 amendments to the Rules Governing Section 2254 Cases explicitly included the opportunity for the petitioner to reply to the answer. Attorneys from the Wisconsin Department of Justice in general and counsel representing the respondent in this case in specific have appeared before this court on enough occasions in habeas cases to be well-aware of this court's practices. And not surprisingly, the respondent offers no authority that suggests that such briefing is required; a plain reading of the Rules Governing Section 2254 cases and related statutes makes clear that such briefing is not required.

A § 2254 case begins with the petition. As this district's standard form, as well as the sample form contained in the Appendix of Forms to the Rules Governing Section 2254 Cases make clear, a petitioner is not required to submit a brief along with his petition but he may do so if he chooses. In this case, Fischer chose to include a brief in support of his petition. (*See* Docket No. 2.)

If ordered to do so under Rule 4, the respondent must then answer the petition in accordance with Rule 5. Until the adoption of the Rules Governing Section 2254 Cases in 1976, the answer was referred to as a "return;" this term is still used in numerous places within Chapter 153 of Title 28. Although currently referred to as an "answer," a response to a petition for a writ of habeas corpus should not be confused with an answer under Fed. R.Civ.P. 8(b) where the party is limited admitting, denying, or stating it lacks sufficient information to respond to each of the petitioner's allegations. Rather, Rule 5 states that "[t]he answer must address the allegation in the petition." This broad command clearly permits more than what is Fed.R.Civ.P. 8(b) permits, which requires only a "short and plain" statement of any defenses and that the party "admit or deny the allegations asserted by the opposing party," Fed.R.Civ.P. 8(b)(1).

Aside from Rule 5's minimal requirements regarding raising certain procedural bars, indicating what transcripts are available, and including all briefs and opinions related to the state court proceedings, the decision of what else to include in an answer to a petition is up to the respondent. For example, the respondent may choose to take a bare-bones approach and simply respond with "boilerplate" that the state court's decision "was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court," as he did in this case. On the other hand, the respondent may believe that a more expansive explanation of his position is warranted by answering the petition with a substantive brief.

The final pleading in a habeas petition is the petitioner's optional reply under Rule 5(e). The opportunity to reply to an answer to a petition is another distinguishing factor between the pleadings in a habeas petition and the ordinary civil case. The same day this matter was reassigned to this court upon the consent of all parties to the full jurisdiction of a magistrate judge,

the court entered an order providing the petitioner 14 days following the respondent's answer in which to reply. (Docket No. 9.) Four weeks later, the respondent submitted his bare-bones 4–page answer. (Docket No. 10.) Two weeks later, the petitioner submitted his reply. (Docket No. 12.) That closed the pleadings in this matter. Notably, at no point did the respondent request that the court establish a briefing schedule.

The fact that this court did not issue an order requiring the parties to submit briefs regarding the petition should be no more surprising to the respondent than the fact that this court did not set a briefing schedule to resolve its current motion to alter or amend judgment. In the context of a habeas petition, Rule 5 sets forth the relevant provisions governing how the parties will present their respective arguments; the court just establishes the dates. Likewise, with respect to the respondent's present motion, a scheduling order was unnecessary because Civil Local Rule 7 and applicable Federal Rules of Civil Procedure govern.

The respondent also seems to find fault in the fact that this court resolved Fischer's petition only 16 days after he filed his reply. (*See* Docket No. 19 at 4.) While every court is quite familiar with the common criticism that litigation is unnecessarily protracted, scarcely is there a complaint that a resolution has been too prompt. Mindful of the truth underlying the maxim that justice delayed is justice denied, this court, like most others, strives to always diligently manage its docket to ensure cases are processed as efficiently and expeditiously as possible. Moreover, the court reminds the respondent that in the context of petitions for writs of habeas corpus, courts are explicitly required by law to expedite the consideration of these cases. *See* 28 U.S.C. § 1657(a).

Therefore, with respect to the respondent's attempt to blame the court for his failure to present any substantive challenge to Fischer's petition, the words of Judge Posner, writing for the court in *Fagan v. Washington,* 942 F.2d 1155, 1157 (7th Cir.1991), seem to capture the present situation:

> The law of habeas corpus is subtle and intricate; mistakes are easy to make. But it is a body of law of which the lawyers employed by a state attorney general should be masters. Failing to achieve such mastery, they should not blame federal judges for springing dangerous criminals free to prey on the citizenry whose safety the attorney general is sworn to protect.

## B. The Respondent Has Waived His Present Arguments

The respondent in this case, like in most petitions for a writ of habeas corpus, chose to offer no substantive opposition to the petition other than reciting the statutory standard and baldly claiming that the petitioner had not met it. Because the standard for a federal court granting a § 2254 case is so high and a court is obligated to apply this high standard regardless of the paucity of the respondent's answer, the respondent nonetheless generally prevails. Whether it is a result of overwork and understaffing at the Wisconsin Department of Justice, reasons which are frequently cited as the explanations for the state's all-too-common requests for extension of time in litigation before this court, or some other reason, scrimping on the amount of time and effort to be invested in a crucial court filing is a decision that may bear significant consequences. Thus, in the rare case where the petition is granted, by failing to make any argument initially, the respondent forfeits any argument that he could have raised earlier, but failed to raise. The respon-

dent had the opportunity to present his arguments and chose not to do so. Thus, the respondent is bound by the consequences of that decision. Accordingly, the court now turns to the question of whether this failure amounts to a forfeiture of the arguments respondent seeks to raise now.

A motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) may be used to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence. *E.g., Bordelon v. Chicago School Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir.2000). A Rule 59(e) motion "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Id.*

*United States v. Resnick,* 594 F.3d 562, 568 (7th Cir.2010); *see also County of McHenry v. Ins. Co. of the West,* 438 F.3d 813, 819 (7th Cir.2006) (quoting *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263 (7th Cir.1995)) ("[A] Rule 59(e) motion 'is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment.' "); *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir.2000); *Anderson v. Flexel, Inc.,* 47 F.3d 243, 247 (7th Cir.1995) (citing *Woods v. City of Michigan City, Ind.,* 940 F.2d 275, 280 (7th Cir.1991); *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 425 (7th Cir.1989); *FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)). Simply stated, "an argument raised for the first time in a Rule 59(e) motion is waived." *Estremera v. United States,* 442 F.3d 580, 587 (7th Cir.2006) (citing *United States v. Rueth Devel. Co.,* 335 F.3d 598, 606 (7th Cir.2003); *Krueger Int'l, Inc. v. Blank,* 225 F.3d 806, 811 (7th Cir.2000)). This rule bars courts from considering new

arguments, regardless of the merits of the argument itself. *Dubin v. LaGrange Country Club,* 1997 WL 610473, 1997 U.S. Dist. LEXIS 14851 (N.D.Ill. Sept. 19, 1997).

The court concludes that the respondent has waived both arguments he seeks to advance in his present motion by failing to raise them in his answer to the petition. Fischer submitted a nine page brief in support of his petition, replete with citations to the record and to relevant case law. In response, the respondent offered only a single paragraph—less than 100 words, nearly all of which are a recitation of the statute—addressing the merits of Fischer's petition. Set forth below, is the entire substantive portion of the respondent's answer to Fischer's petition:

Answering section IV. of the petition, respondent DENIES that the exclusion of the expert testimony proffered by Fischer, which the Wisconsin Supreme Court found was barred by state statute, violated Fischer's right to present a defense under U.S. Const. amends. V, VI and XIV. The state supreme court's decision rejecting Fischer's federal constitutional claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Nor was the state supreme court's decision based on an unreasonable determination of the facts in light of the evidence presented in state court.

(Docket No. 10, ¶ 4.)

The court rejects the notion that merely reciting the legal standard is sufficient to preserve every iteration of argument that might be spun in opposition to the petition. The time for raising specific arguments in opposition to a petition for a writ of habeas corpus is in response to the petition. This is particularly so when, as here, the respondent seeks to rely upon arguments

that are unique to the habeas context and/or were not raised in the state court proceedings.

The arguments that the respondent presents in his present motion plainly could have, and should have, been raised earlier. With respect to the respondent's contention that this court erred in concluding that Fischer would have been acquitted had the jury believed the expert's testimony, this argument is premised upon the fact that Fischer was convicted of two charges. First, he was convicted of operating with a prohibited alcohol concentration. *See* Wis. Stat. § 346.63(1)(b). It was on this charge that the expert's testimony as to the level of Fischer's BAC when he was driving was most obviously relevant. If the jury would have believed the expert's testimony that Fischer's BAC was less than 0.08% at the time he was driving, as the court noted, Fischer would necessarily have been acquitted of this charge. However, Fischer was also convicted of operating while under the influence. *See* Wis. Stat. § 346.63(1)(a). Statutorily, a conviction under this charge does not require proof of any particular BAC. Rather, all that is required is that the state prove beyond a reasonable doubt that as a result of an intoxicant, Fischer was "incapable of safely driving." *Id.*

Thus, the state contends, that even if the jury would have believed the testimony of Fischer's expert, Fischer would still have been convicted of driving under the influence. Although the jury found Fischer guilty of two offenses, under Wisconsin law, there is only one conviction for purposes of sentencing and for suspension and revocation purposes. *See* Wis. Stat. § 346.63(1)(c). Thus, Fischer would have received the same sentence even if he had been acquitted of the BAC offense, but convicted of the driving under the influence offense.

Within the context of habeas jurisprudence, the respondent's argument that Fischer's expert was relevant only to his BAC offense would seemingly bar the court from even considering the merits of Fischer's petition. If Fischer would have received the same sentence irrespective of the admission and ultimate effect of the expert's testimony, Fischer arguably cannot demonstrate the threshold requirement that his claim for relief resulted in "custody." This is unlike a petitioner serving concurrent sentences whereby he may be regarded as "in custody" under either one, *see, e.g., Cramer v. Fahner,* 683 F.2d 1376, 1380–81 (7th Cir.1982), because despite having been found guilty of two offenses, pursuant to Wis. Stat. § 346.63(1)(c), Fischer suffered but one "conviction." Thus, if the respondent prevailed upon the argument he seeks to advance now, it would bar the court from even reaching the merits of Fischer's petition.

While the court rejects the suggestion that the expert's testimony was relevant only to the charge of operating with a prohibited alcohol concentration, the foregoing observation emphasizes that if respondent had prevailed on this argument, it would have acted as a complete bar upon the consideration of the merits of Fischer's petition. The court makes this observation to underscores why the respondent should have raised this pre-existing argument in response to the petition.

The respondent similarly could and should have raised his present argument that this court was permitted to rely upon the reasoning of a minority of the Wisconsin Supreme Court expressed in concurrence, rather than only that expressed by the majority of the court. The concurrence's conclusion that a preliminary breath test ("PBT") result could reasonably be excluded because it was unreliable was the basis for the decisions by the

circuit court and court of appeals and the main thrust of the state's argument throughout the state court proceedings. Thus, this argument also would have been readily apparent to the respondent prior to this court's decision. If the respondent believed it was appropriate for this court to consider that argument, he was obligated to raise that argument before this court entered judgment.

In fact, although respondent does not say much in his answer, he did seemingly say enough to explicitly waive this argument. In his answer, the respondent contended, "The state supreme court's decision rejecting Fischer's federal constitutional claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court." By his own statement, the respondent addresses only the court's "decision" and makes no reference to the concurrence, other decisions of Wisconsin courts, or decisions by courts in other states, which he urges this court to now rely upon.

Thus, this court concludes that the respondent's present Rule 59(e) motion must fail because the respondent waived the arguments therein by failing to raise them pre-judgment. The court declines to look past the respondent's waiver and exercise its discretion to consider the merits of these arguments. *See Armstead v. Frank*, 383 F.3d 630, 633 (7th Cir.2004). Nonetheless, the court shall briefly explain why even if this court was to consider the merits of the respondent's present arguments, the court would reject them upon their merits.

## III. THE MERITS OF RESPONDENT'S ARGUMENTS

### A. Decision of the Wisconsin Supreme Court

■ Circuit courts across the country, including the Seventh Circuit, have re-peatedly indicated that a federal court considering whether a state court unreasonably applied federal law must focus upon the result reached by the state court rather than the reasoning the court employed to arrive at that result. *See* Fed. Habeas Man. § 3:70. The rationale behind this principle is the same as that which underlies much of § 2254 law—deference to state courts. A federal court is not a superintending authority tasked with reviewing the propriety of state court's reasoning as a professor might review the analysis set forth by a student on an exam. *See RaShad v. Walsh*, 300 F.3d 27, 45 (1st Cir.2002). Thus, it is generally inappropriate for a federal court to grant a petition for a writ of habeas corpus simply because the state court used erroneous reasoning to arrive at a constitutionally sound result.

For example, in *Lopez v. Thurmer*, 573 F.3d 484 (7th Cir.2009), the Seventh Circuit noted that the Wisconsin Court of Appeals misinterpreted the relevant precedents when assessing whether a defendant's due process rights were infringed by an overwhelming security presence during the jury's visit to the scene of the crime. The Seventh Circuit nonetheless denied the petition, noting that "in deciding the federal due process issue before it, it is not the court's methodology but its result that we review to determine whether its judgment was so infirm as to require the issuance of a federal writ of habeas corpus." *Lopez*, 573 F.3d at 493 (citing *Malinowski v. Smith*, 509 F.3d 328, 339 (7th Cir.2007)). Federal courts have stated that in the interest of preserving the principle of deference to the decisions of state courts underlying § 2254 law, when the reasoning employed by a state court is flawed or even absent, the state court's ultimate decision is still reviewed under AEDPA's highly deferential standard. *See, e.g., Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir.2009) (citing *Neal v. Puckett*,

286 F.3d 230, 246 (5th Cir.2002) (en banc); *Hurtado v. Tucker*, 245 F.3d 7, 20 (1st Cir.2001); *Hennon v. Cooper*, 109 F.3d 330, 334–35 (7th Cir.1997); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000)).

The respondent contends that this general principle translates into a requirement that this court limit its review to only the result reached by the Wisconsin Supreme Court, i.e. that it was constitutional to preclude admission of PBTs for any purpose. Thus, in the view of the respondent, if there was any reasonable basis to reach this conclusion, i.e. the rationale relied upon by the trial court, the court of appeals, and a minority of the Wisconsin Supreme Court that the state's interest in banning PBTs is because PBTs are unreliable, this court was required to deny to the petition.

When initially reviewing Fischer's petition, the court considered and rejected this wholly results oriented approach precisely because it is inconsistent with the principles of comity and deference which underlie § 2254 law. Upon full consideration of the respondent's present motion, the court holds to this conclusion.

Should a state court err in its legal reasoning but nonetheless arrive at a constitutionally sound result, such error may be seen as harmless. Thus, it should hardly be surprising, especially in light of the highly deferential standard of review employed in § 2254 cases, that a federal court will look by these shortcomings when reviewing a habeas petition. In the present case, however, the Wisconsin Supreme Court did not err in its legal reasoning. The Wisconsin Supreme Court correctly identified the relevant controlling United States Supreme Court precedent, which "involves weighing the defendant's right against the State's interest in excluding the evidence." *State v. Fischer*, 2010 WI 6, ¶ 5, 322 Wis.2d 265, 778 N.W.2d 629.

The fact that this case involves a balancing of opposing interests is fundamental in understanding the error of the respondent's argument. Most any legal balancing test may be broken down into two distinct steps. First, there is a determination of what is on either side of the balance. Second, there is the weight given to each of those sides. When considered in the context of § 2254 petition, a federal court is required to independently address a state court's determination of each of those steps.

With respect to the first step, the Wisconsin Supreme Court determined that on the state's side of the balance was the state's interest in keeping drunk drivers off the road. The respondent urges this court to substitute the Wisconsin Supreme Court's finding with an interest identified by the trial court, the court of appeals, and a minority of the Wisconsin Supreme Court but explicitly rejected by the majority. The respondent contends this change at the first step would ultimately change the second step determination of which way the balance tipped.

Longstanding principles of comity and deference, as well as explicit statutory commands, expressly prohibit federal court from brushing aside the factual findings of a state court with the casualness advocated by the respondent. *See* 28 U.S.C. § 2254(e)(1); *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir.2009). The fact that it is ironically the state's own attorney advocating that a federal court ignore the findings of the Wisconsin Supreme Court does not negate this court's obligation to respect that court's findings. *See Burden v. Zant*, 498 U.S. 433, 436, 111 S.Ct. 862, 112 L.Ed.2d 962 (1991) (per curiam).

Having determined it was bound to respect the factual findings of the Wisconsin Supreme Court, this court's task was limited to the second step of the balancing and

determining the weight of the competing interests and which way the balance ultimately tipped. As stated in its prior order, this court determined that the balance clearly tipped in the defendant's favor.

Significantly, the finding the respondent urges the court to upset is a state court's determination of the state interest at issue in its own laws regarding the admission of evidence. A state court is clearly in the best position to make such determinations. As such, these are precisely the sorts of determinations that a federal court proceeding in a § 2254 matter must be exceptionally reluctant to intrude upon. Unlike a question of ultimate constitutionality, where a state and federal court might be on equal footing, a federal court substituting its own judgment for that of a state court on the question of a state's interest behind its own law would be a far greater affront to comity.

Additionally, upsetting the Wisconsin Supreme Court's factual finding and holding that PBTs are unreliable would throw Wisconsin law into flux. As the Wisconsin Supreme Court noted, such an approach could be seen as a radical departure from Wisconsin's tradition under which reliability of scientific evidence is determined by the jury rather than the federal approach in which the judge acts as a gatekeeper. Although this court's decision would likely not be afforded controlling weight in other state prosecutions, see State v. Mechtel, 176 Wis.2d 87, 94–94, 499 N.W.2d 662, 666 (1993), any step towards involuntarily forcing Wisconsin down the Daubert road, see Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), is surely not an appropriate role for a federal court tasked with reviewing a state defendant's petition for a writ of habeas corpus. It is up to the state to decide whether it wishes to follow the Daubert standard. Cf. Wis. Legis., Jan. 2011 Special Sess., 2011 A.B. 1, §§ 35–36 (bill seeking to change Wisconsin law to adopt a Daubert-style approach to expert testimony). Moreover, because the statutory ban upon the admissibility of PBTs is limited to the drunk driving context, see Wis. Stat. § 343.303, a conclusion in a case addressing a Wisconsin conviction that PBTs are unreliable, and specifically that this was the reason why the Wisconsin Legislature banned them from the drunk driving context, would cause uncertainty as to the viability of PBT results in the variety of other circumstances where the results are routinely presented in Wisconsin courts.

Finally, the respondent points out that if the procedural history of this case was slightly different, for example, if the Wisconsin Supreme Court had denied review, had summarily affirmed the court of appeals without an opinion, or if one Justice had switched to the minority concurring view, the prevailing finding would be that PBTs were excluded because they were unreliable. Although it might be interesting to speculate how subtle changes might have led to different results, courts must analyze matters as they are, not as they could have been.

The fact that the Wisconsin Supreme Court's factual finding was the product of a divided court and contrary to the factual findings of the inferior courts that had previously considered the matter does not somehow relegate the court's finding to second-class status. Rather, the fact that the Wisconsin Supreme Court chose to accept this case and to substitute its factual finding despite an obviously strong and prevalent alternate view, and in fact, the court split 4 to 3 solely on this issue, speaks to the seriousness and deliberateness of the court's view. It is a factual finding this court cannot upset by pretending it is a swing vote on the Wisconsin Supreme Court.

Because this court was unable to upset Wisconsin Supreme Court's finding as to what should be placed on the state's side of the balance, this court's role was limited to assessing the weight of this interest and which way the balance ultimately tipped. Upon consideration of the relevant interests, it was this court's conclusion that the balance so clearly tipped in favor of the defendant that the Wisconsin Supreme Court's conclusion was unreasonable.

## B. Fischer's Convictions

The respondent contends that the court also erred when it discussed a probability that Fischer would have been acquitted had the expert's testimony been admitted and believed by the jury. As stated above, Fischer was convicted of both operating with a prohibited alcohol concentration, *see* Wis. Stat. § 346.63(1)(b), and operating while under the influence, *see* Wis. Stat. § 346.63(1)(a). Although found guilty of two crimes, for sentencing, there is only one resulting conviction, and the same sentence would have been imposed whether Fischer was found guilty of either or both offenses. *See* Wis. Stat. § 346.63(1)(c). The respondent contends that the excluded expert testimony was relevant only to the operating with a prohibited alcohol concentration offense and thus, even if the expert testimony had been admitted and believed by the jury, Fischer would still have been convicted of operating while under the influence and received the exact same sentence.

Again, at the time the court was reviewing Fischer's petition, despite the respondent's failure to raise this argument at that time and resulting waiver, the court was well-aware that Fischer was found guilty of two offenses and by operation of Wis. Stat. § 346.63(1)(c), there would be only a one resulting conviction for sentencing purposes. Upon consideration of this fact, the court still arrived at its ultimate conclusion regarding the significance of

Fischer's interest in the admission of the expert testimony and thus the interest of the defendant on the defense side of the balance. Having now re-considered this argument, the court stands by its prior conclusions.

One need look only to the instructions given to the jury to understand the significance of the BAC evidence in the operating while under the influence charge. The jury was instructed as follows with respect to the operating while under the influence charge:

> If you are satisfied beyond a reasonable doubt that there was .08 grams or more of alcohol in 100 milliliters of the defendant's blood at the time the test was taken, you may find from that fact alone that the defendant was under the influence of an intoxicant at the time of the alleged operating ... but you are not required to do so.
>
> * * *
>
> Evidence has been received that within three hours of the defendant's alleged operating of a motor vehicle a sample of the defendant's blood was taken. An analysis of the sample has also been received. This is relevant evidence that the defendant had a prohibited alcohol concentration and was under the influence at the time of the alleged operating.

(Ans. Ex. O at 121–22.)

Under certain circumstances, it is theoretically possible that a jury could find a person guilty of operating while under the influence even though it found that the defendant's BAC was below the legal limit. However, as to the converse, if the jury finds that the defendant's BAC is over the legal limit, based upon the instructions quoted above, a guilty verdict on the operating while under the influence charge is almost sure to follow. Thus, the fact that Fischer was convicted of operating while

under the influence may simply reflect the jury's conclusion that Fischer's BAC exceeded the legal limit.

Hypotheticals aside, as a practical matter, BAC evidence is the coup de grâce of a drunk driving case. A jury that concludes that an individual's BAC is below the legal limit is exceptionally unlikely to convict the defendant of any drunk driving crime. Thus, under the circumstances of a case such as this, a conclusion that a defendant's BAC was below the legal limit will almost surely result in an acquittal of not only the operating with a prohibited alcohol concentration charge, but also of the operating while under the influence charge. This is the likely result, even though under certain circumstances, a conviction might be obtained for the under influence charge, despite the defendant operating with a legal BAC. Therefore, reconsidering the respondent's present argument, the court remains convinced that the interest of the defendant in the admission of the PBT evidence so strongly and clearly outweighs the interest of the state in barring the admission of the evidence that the Wisconsin Supreme Court's decision affirming Fischer's conviction was unreasonable.

## IV. CONCLUSION

For the reasons set forth above, the court shall deny the respondent's motion to alter or amend judgment. A plain reading of Rule 5 of the Rules Governing Section 2254 Cases indicates that the pleadings with respect to a petition for a writ of habeas corpus are closed and the matter is ready for resolution upon the filing of the petition, which may be supplemented by a brief in support, an answer which may take a variety of forms but is generally the respondent's only opportunity to raise his reasons for opposing the petition, and the petitioner's optional reply. The respondent in this case chose to submit a bare bones answer wherein he offered essential-

ly no substantive opposition to the petition other than a recitation of the relevant legal standard and bald claim that the respondent had not met it. The arguments that the respondent seeks to raise now could and should have been raised prior to judgment. By failing to timely raise these arguments, the respondent has waived them.

Although the court declines to exercise its discretion to consider the merits of the respondent's arguments, if the court were to do so, the respondent's present motion would nonetheless be denied. This court was not permitted to simply ignore the Wisconsin Supreme Court's factual finding as to what is the state's interest in barring the admission of PBT results for any purpose in a drunk driving case. Most certainly, this court was not permitted to supplant the Wisconsin Supreme Court's factual finding with a factual finding that court considered and explicitly rejected. Finally, the jury instructions make clear that the BAC evidence was highly relevant to both the operating with a prohibited alcohol concentration charge and the operating while under the influence charge. Thus, the defendant's interest in the admission of the expert testimony, which, if believed by the jury, would have resulted in a conclusion that Fischer's BAC was below the legal limit at the time he was driving, was exceptionally strong.

**IT IS THEREFORE ORDERED** that the respondent's motion to alter or amend judgment, (Docket No. 15), is **denied.**